BUCHALTER LLP
ARTIN BETPERA (SBN: 244477)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant
HEART & SOIL SUPPLEMENTS, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CHARLES BATHERSFIELD, individually and on behalf of all those similary situated,

Plaintiff and Counter-Defendant,

vs.

HEART & SOIL SUPPLEMENTS, LLC,

Defendant and Counter-Claimant.

Case No. 3:26-cv-01124-GPC-SBC

Assigned to Hon. Gonzalo P. Curiel

**DEFENDANT HEART & SOIL SUPPLEMENTS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6), OR IN THE ALTERNATIVE, TO STRIKE COUNTERCLAIM I PURSUANT TO FED. R. CIV. P. 12(f)**

Date: August 14, 2026
Time: 1:30 p.m.
Ctrm: 12A

Complaint Filed: February 22, 2026
Trial Date: None Set

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....................8

FACTUAL AND PROCEDURAL BACKGROUND ....................11

I. PLAINTIFF'S ENROLLMENT AND THE TERMS OF SERVICE. ....................11

II. THE COMPLAINT. ....................12

III. THE COUNTERCLAIMS. ....................12

LEGAL STANDARDS ....................12

ARGUMENT ....................13

I. PLAINTIFF'S BURDEN-OF-PROOF REFRAIN IS IRRELEVANT TO THE MOTION AND PLAINTIFF'S ARGUMENTS REGARDING TIME-BASED CONSENT ARE WRONG AS A MATTER OF LAW ....................13

A. The Burden of Proof Is Not Relevant to the Motion to Dismiss And, In Any Event, Should Lie with the Plaintiff in These Cases ....................14

B. The Motion's theory of liability invents a time-specific consent requirement that appears nowhere in the TCPA, the FCC's implementing regulation, or any Ninth Circuit decision. ....................17

II. COUNTERCLAIM I STATES A CLAIM FOR DECLARATORY RELIEF AND SHOULD NOT BE STRICKEN UNDER RULE 12(F). ....................18

III. PLAINTIFF HAS NOT ESTABLISHED THAT THE BREACH OF CONTRACT COUNTERCLAIM SHOULD BE DISMISSED...21

A. Plaintiff's First Argument Mischaracterizes the Case Law Upon Which It Relies. ....................21

B. Plaintiff's Public Policy Argument is Equally Flawed. ....................23

CONCLUSION ....................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Credit One Bank*,
No. 16cv3125-MMA (AGS), 2017 WL 2258064 (S.D. Cal. May 23, 2017) ........ 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 10, 28

*Bocanegra v. Aetna Life Ins. Co.*,
605 S.W.2d 848 (Tex. 1980) ........ 28

*Brillhart v. Excess Insurance Co.*,
316 U.S. 491 (1942) ........ 9

*Citizens Ins. Co. of Am. v. Chief Dig. Advisors*,
578 F. Supp. 3d 1113 (S.D. Cal. 2020) ........ 21

*Colaprico v. Sun Microsys., Inc.*,
758 F. Supp. 1335 (N.D. Cal. 1991) ........ 13

*Cortina v. Goya Foods, Inc.*,
94 F. Supp. 3d 1174 (S.D. Cal. 2015) ........ 13

*Cox v. Wilkins*,
No. 03-05-00110-CV, 2006 WL 821202 (Tex. App. Mar. 31, 2006) ........ 24

*D'Ottavio v. Slack Techs.*,
No. 1:18-cv-09082-NLH-AMD, 2022 WL 15442211 (D.N.J. Oct. 26, 2022) ........ 10, 26

*Estrada v. Aragon Adver., LLC*,
No. 4:23-cv-3407, 2024 WL 5059166 (S.D. Tex. Dec. 10, 2024) ........ 26, 27

*Franklin v. Upland Software, Inc.*,
No. 1:18-CV-00236-LY, 2019 WL 433650 (W.D. Tex. Feb. 1, 2019) ........ 10, 27

*Glendora Courtyard, LLC v. BBVA Compass Bancshares Inc.*,
No. 16-cv-1189-JLS-KSC, 2017 WL 960431 (S.D. Cal. Mar. 13, 2017) ....................21

*Glob. Private Funding, Inc. v. Empyrean W., LLC*,
No. CV 13-04622 DDP, 2015 WL 3751769 (C.D. Cal. June 16, 2015) ....................30

*Gonzalez v. Harris Farms, Inc.*,
No. 1:14-cv-00038-LJO-SAB, 2014 WL 6981429 (E.D. Cal. Dec. 9, 2014)....................22

*Government Employees Insurance Co. v. Dizol*,
133 F.3d 1220 (9th Cir. 1998)....................9, 18

*Hoelscher v. Kilman*,
No. 03-04-00440-CV, 2006 WL 358238 (Tex. App. Feb. 16, 2006) ....................24

*Hydrogen Master Rights, Ltd. v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017) ....................29

*J&J Sports Prods. v. Sally & Henry's Doghouse Bar & Grill LLC*,
No. 13-cv-2924-BAS-KSC, 2016 WL 1323464 (S.D. Cal. Apr. 4, 2016) ....................19

*Kaotica IP Corp. v. Iconic Mars Corp.*,
No. 21-CV-433-CAB-DEB, 2021 WL 3726006 (S.D. Cal. Aug. 23, 2021) (S.D. Cal. Aug. 23, 2021) ....................12

*King v. Bon Charge*,
814 F. Supp. 3d 497 (D. Del. 2025) ....................16

*Lemieux v. Lender Processing Ctr.*,
No. 16-cv-01850-BAS-DHB, 2018 WL 637945 (S.D. Cal. Jan. 31, 2018) ....................10, 22, 31

*Local SEIU, Local 2028 v. Rady Children's Hosp.*,
No. 08cv486 ....................28

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,
869 F.3d 795 (9th Cir. 2017)....................13

*McCurley v. Royal Seas Cruises, Inc.*,
331 F.R.D. 142 (S.D. Cal. 2019)....................15

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006)....................28

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal.4th 459 (Cal. 1992)....................23

*Preston v. Navy Fed. Credit Union*,
No. CV 24-8372 JGB, 2026 WL 1013508 (C.D. Cal. Mar. 31, 2026)....................23

*R.R. St. & Co. Inc. v. Transport Ins. Co.*,
656 F.3d 966 (9th Cir. 2011)....................18

*Rosales v. Cty. of San Diego*,
511 F.Supp.3d 1070 (S.D. Cal. 2021)....................21

*In re: Rules & Regs. Implementing the TCPA*,
7 FCC Rcd 8752 (1992)....................16

*In re Rules & Regulations Implementing the TCPA*,
18 FCC Rcd. 14014 (2003)....................9, 12, 17

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
23 FCC Rcd. 559 (Jan. 4, 2008)....................15

*Ryabyshchuk v. Citibank (South Dakota) N.A.*,
No. 11-cv-1236 - IEG (WVG), 2011 WL 5976239 (S.D. Cal. Nov. 28, 2011)....................13

*Schaffer v. Weast*,
546 U.S. 49 (2005)....................14

*Sherwin-Williams Co. v. Holmes County*,
343 F.3d 383 (5th Cir. 2003)....................20

*Stickrath v. Globalstar, Inc.*,
No. C07-1941 TEH, 2008 WL 2050990 (N.D. Cal. May 13, 2008)....................19

*Suarez v. Cty. of San Diego*,
3:20-cv-00456-WQH-BGS, 2021 WL 615047 (S.D. Cal. Feb. 16, 2021)....................21

*Tan v. Quick Box, LLC*,
No. 3:20-cv-01082, 2021 WL 2473948 (S.D. Cal. June 16, 2021) ....................22

*Tex. Ed Tech Sols., LLC v. Authentica Sols., LLC*,
Civil Action No. 1:20-cv-00151-SDG, 2021 WL 1222296, at *2-3 (N.D. Ga. Apr. 1, 2021) ....................24, 29

*Tovar v. GC Servs. Ltd. P'ship*,
No. 3:21-CV-1597-CAB-BGS, 2021 WL 5989944 (S.D. Cal. Dec. 17, 2021) ....................28

*Tribble & Stephens Co. v. RGM Constructors, L.P.*,
154 S.W.3d 639 (Tex. App. 2004) (plurality opinion) ....................24

*Unite Here Local 30 v. Omni Hotels Mgmt. Corp.*,
No. 19cv830-MMA (LL), 2019 WL 6118461 (S.D. Cal. Nov. 18, 2019) ....................28

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) ....................8, 9, 14, 15

*Vianet Grp. PLC v. Tap Acquisition, Inc.*,
No. 3:14-CV-3601-B, 2016 WL 4368302 (N.D. Tex. Aug. 16, 2016) ....................23

*Whittaker v. Freeway Ins. Servs. Am., LLC*,
No. CV-22-8042-PCT-DGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023) ....................16

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ....................10, 21

**Statutes**

9 U.S.C. § 4 ....................28

47 U.S.C. § 227(a)(4) ....................8, 12, 16, 17

47 U.S.C. § 227(a)(4)(A) ....................15, 17

47 U.S.C. § 227(b) ....................15, 16

47 U.S.C. § 227(b)(1)(A) ....................9, 15

47 U.S.C. § 227(c) .......... 9, 15, 16, 18

47 U.S.C. § 227(c)(5) .......... 16

Fed. R. Civ. P. 12(b)(6) .......... 12

Fed. R. Civ. P.12(f) .......... 9, 13, 18, 21

Fed. R. Civ. P.15(a)(2) .......... 31

Fed. R. Civ. P.41(a)(2) .......... 20

Texas Civil Practice & Remedies Code § 38.001 .......... 10, 23, 24

Texas Civil Practice & Remedies Code § 38.002 .......... 24

**Other Authorities**

John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*, 66 Santa Clara L. Rev. 94, 103–04 (2026) .......... 29

## INTRODUCTION

This is not an isolated dispute. The Complaint here is one of at least 583 substantively identical TCPA quiet-hours class actions that Plaintiff's counsel, Gerald D. Lane, Jr., and his firm—the Law Offices of Jibrael S. Hindi (the "Hindi Firm")—have filed in federal district courts since the Fall of 2024. *See* Declaration of G. David Carter in Support of Heart & Soil's Motion for Judgment on the Pleadings (Dkt. 14-1) ("Carter MJP Decl.") ¶¶ 23–24. In each case, the firm pleads that the FCC's quiet-hours rule prohibits any marketing text sent outside an 8:00 a.m.–9:00 p.m. window, regardless of whether the recipient consented to receive it. In each case, the firm proposes a putative nationwide class that sweeps in every recipient, including consumers who, like Plaintiff, voluntarily opted in. And in none of those cases has the firm pressed to merits resolution the threshold legal question that controls every one of them: whether the FCC's quiet-hours rule reaches messages sent with prior express consent. Cases are filed in bulk, settled or dismissed, never adjudicated. *Id.* ¶¶ 27–28. The pattern is not incidental to the litigation; it is the litigation.

Heart & Soil filed two counterclaims in response. Counterclaim I asks the Court to declare what the TCPA's text and the FCC's own definitions make plain: a "telephone solicitation" excludes messages sent with "prior express invitation or permission," 47 U.S.C. § 227(a)(4), and the FCC's quiet-hours rule, 47 C.F.R. § 64.1200(c)(1), therefore does not reach messages sent to consenting subscribers. Counterclaim II pleads discrete breaches of the Terms of Service Plaintiff entered on December 12, 2024, including a class action waiver, a mandatory arbitration provision, an indemnification obligation, and an express warranty of accuracy that Plaintiff's own pleading contradicts.

Plaintiff's Motion to Dismiss rests on a foundation that cannot bear its weight. Plaintiff's repeated invocation of the burden-of-proof rule from *Van Patten v.*

*Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), supports none of the relief he seeks. The *Van Patten* rule — that prior express consent is an affirmative defense, not an element of the plaintiff's prima facie case — arose under Section 227(b)(1)(A), the autodialer provision, and derives entirely from the FCC's 2008 Declaratory Ruling addressing creditor calls placed using autodialers. The 2008 Order itself made clear that its analysis did *not* extend to "telephone solicitations" under Section 227(c), the wholly separate framework that undergirds Plaintiff's claim here. Under Section 227(c) and 47 C.F.R. § 64.1200(c)(1), the absence of consent and absence of an established business relationship are best understood as elements of Plaintiff's own claim, not affirmative defenses.

The Motion's second consent-related theme — that Plaintiff's opt-in did not authorize messages "at the specific times" they were sent (Mot. at 15) — is unsupported by any statute, regulation, FCC order, or judicial decision. The FCC has expressly rejected the proposition that consumers who consent to receive calls can dictate acceptable calling times, recognizing that "the costs of monitoring calling times for individual consumers could be substantial for many companies, particularly small businesses." *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, ¶ 210 (2003).

Plaintiff argues for a *per se* rule that declaratory counterclaims mirroring affirmative defenses must be dismissed. That is not the law in this Circuit, which assigns "broad discretion" to district courts and instructs them to apply the multi-factor framework derived from *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), and articulated in *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998). Every relevant *Dizol* factor counsels in favor of entertaining the claim here. The claim is not duplicative; it serves a particularly useful purpose given the documented pattern of the Hindi Firm's 583 substantively identical filings. The alternative Motion to Strike under Rule 12(f), which Plaintiff did not separately

brief, is both procedurally improper under *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), and substantively unfounded.

Counterclaim II should likewise survive. Plaintiff's four asserted grounds for dismissal each fail. *First*, Plaintiff's reliance on *Lemieux v. Lender Processing Center* mischaracterizes the case: *Lemieux* rejected an asserted federal right of *indemnity* against third parties for TCPA liability and expressly declined supplemental jurisdiction over the accompanying state-law breach-of-contract claim. It does not reach — let alone foreclose — a state-law breach-of-contract counterclaim against the TCPA plaintiff himself, which is what Heart & Soil pleads here. *Second*, Plaintiff's public-policy theory misapplies California law to a contract that, by its express terms, is governed by Texas law, and it ignores both Texas Civil Practice & Remedies Code § 38.001 (authorizing recovery of attorney fees for breach of a written contract) and the line of TCPA-specific decisions — *D'Ottavio v. Slack Technologies*, *Estrada v. Aragon Advertising*, and *Franklin v. Upland Software* — that support recognizing breach-of-contract, breach-of-good-faith, and fraud counterclaims where, as here, the plaintiff has manufactured TCPA claims. *Third*, Plaintiff's FAA theory treats a permissive remedy (Section 4's petition to compel) as exclusive. That theory, however, is contrary to the FAA's text, *AT&T Mobility LLC v. Concepcion*'s instruction that arbitration provisions are treated like any other contract, and the Texas election-of-remedies doctrine. As Plaintiff's own Motion repeatedly emphasizes, Heart & Soil has elected damages over specific performance; nothing denies Heart & Soil this choice. *Fourth*, Plaintiff ignores the express warranty Plaintiff made in the Terms of Service — that "any and all information that you provide . . . is accurate and valid" — and the covenant to "comply in good faith with the terms of th[e] Agreement," both of which Paragraph 21 of the Complaint directly contradicts. Heart & Soil pleads not only breach of the arbitration agreement and class-action waiver, but also breach of those warranty and good-faith provisions

— none of which Plaintiff's Motion meaningfully addresses.

For these reasons, the Court should deny the Motion to Dismiss and the alternative Motion to Strike in their entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PLAINTIFF'S ENROLLMENT AND THE TERMS OF SERVICE.

On December 12, 2024, Plaintiff visited heartandsoil.co and was presented with a pop-up enrollment form for Heart & Soil's SMS/MMS Mobile Messaging Program. ECF 6, Counterclaims ("CC") ¶ 7. The pop-up expressly notified Plaintiff that "[b]y providing your phone number, you agree to receive recurring automated marketing text messages . . . . You also agree to the TERMS OF SERVICE and PRIVACY POLICY." CC ¶ 7. Plaintiff entered his telephone number, pressed "Activate 10% off," received a two-factor verification text containing the code 1592, and entered that code into the pop-up form to confirm his enrollment. CC ¶ 8. Postscript, Heart & Soil's SMS platform, maintains records of that double-verified opt-in. CC ¶ 8.

By completing enrollment, Plaintiff accepted Heart & Soil's Terms of Service. CC ¶¶ 10–11. The Terms include, among other provisions: an SMS/MMS program consent (CC ¶ 11(a)); a consent to communications (CC ¶ 11(b)); a binding mandatory arbitration provision (CC ¶ 11(c)); a class action waiver under which Plaintiff agreed he "WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST HEART & SOIL ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING" (CC ¶ 11(d)); an indemnification provision (CC ¶ 11(f)); and an express warranty that "any and all information that you provide to Heart & Soil and the Website is accurate and valid" coupled with a covenant to "comply in good faith with the terms of th[e] Agreement" (CC ¶ 11(g)).

## II. THE COMPLAINT.

Notwithstanding the foregoing, on February 23, 2026, Plaintiff filed this putative class action in federal court. CC ¶ 12. Paragraph 21 of the Complaint alleges that Plaintiff "never signed any type of authorization permitting or allowing Defendant to send them telephone solicitations before 8 am or after 9 pm." CC ¶ 13. As the Postscript records demonstrate and the pleading alleges, that statement is false: Plaintiff signed up through a double-verified opt-in process to receive "recurring automated marketing text messages" with no temporal carve-out. CC ¶ 13. Therefore, Heart & Soil had legal authority to send Plaintiff messages at any time and had no duty to honor "'acceptable' calling times" because "monitoring calling times for individual consumers could be substantial for many companies, particularly small businesses." *In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 at ¶¶ 208-10 (2003).

## III. THE COUNTERCLAIMS.

Heart & Soil's Answer asserted eleven affirmative defenses and two counterclaims. Counterclaim I seeks a declaratory judgment that (a) the FCC's quiet-hours prohibition at 47 C.F.R. § 64.1200(c)(1) applies only to "telephone solicitations" as defined in 47 U.S.C. § 227(a)(4); (b) a text message sent to a consumer who has provided prior express invitation or permission is not a "telephone solicitation"; and (c) Heart & Soil did not and is not violating the quiet-hours rule by sending text messages to consenting consumers. CC ¶ 26. Counterclaim II pleads breach of contract. CC ¶ 30(a)–(d).

## LEGAL STANDARDS

A motion to dismiss a counterclaim under Rule 12(b)(6) is reviewed under the same standard as a motion to dismiss a complaint. *Kaotica IP Corp. v. Iconic Mars Corp.*, No. 21-CV-433-CAB-DEB, 2021 WL 3726006, at *1 (S.D. Cal. Aug. 23, 2021) (S.D. Cal. Aug. 23, 2021). The Court accepts all well-pleaded allegations as

true and construes them in the light most favorable to the pleader. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate only where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal citation and quotation marks omitted).

Rule 12(f) authorizes the Court to strike "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored" because they "are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (*quoting Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

## ARGUMENT

### I. PLAINTIFF'S BURDEN-OF-PROOF REFRAIN IS IRRELEVANT TO THE MOTION AND PLAINTIFF'S ARGUMENTS REGARDING TIME-BASED CONSENT ARE WRONG AS A MATTER OF LAW

Before turning to the specifics of the Counterclaims, Heart & Soil must address two consent-related issues that permeate Plaintiff's Motion. First, the Motion returns repeatedly to the proposition that "consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." Mot. at 5 (quoting *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 172 (S.D. Cal. 2019), in turn, citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)); *see also* Mot. at 15 (citing *Ryabyshchuk v. Citibank (South Dakota) N.A.*, No. 11-cv-1236 - IEG (WVG), 2011 WL 5976239, at *3-5 (S.D. Cal. Nov. 28, 2011).[1] Plaintiff uses that single sentence to do an extraordinary

[1] For the court's convenience, Defendant notes that the Motion cites the case as 2011

amount of work—it is the predicate for dismissing the declaratory-judgment counterclaim as a "mirror image" of an affirmative defense (Mot. at 4–7); it is the predicate for dismissing the breach-of-contract counterclaim as a mere "merits dispute" recast in contract clothing (Mot. at 14–16); and it appears to be the unstated reason Plaintiff treats his own pleading as though immune from any obligation to candidly acknowledge or address the impact of the consent he provided to Heart & Soil. Second, the Motion's framing that Plaintiff's consent is "contested" because it did not specifically authorize the messages *at the specific times* they were sent. The proposition that consent needed to specify times that messages could be sent is one Congress did not write, the FCC has expressly rejected, and no caselaw supports.

### A. The Burden of Proof Is Not Relevant to the Motion to Dismiss And, In Any Event, Should Lie with the Plaintiff in These Cases

Plaintiff's burden-of-proof argument is red herring on the Motion to Dismiss. Pleading sufficiency and trial-burden allocation are distinct analytical issues governed by different rules. *See Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (allocation of trial burden is a separate question from pleading). As Heart & Soil has demonstrated in its Motion for Judgment on the Pleadings (ECF No. __), Plaintiff's quiet-hours claim under 47 C.F.R. § 64.1200(c)(1) should not reach discovery when the pleadings show that there's no plausible way the plaintiff received a "telephone solicitation." But, even if the Court does not grant Heart & Soil's pending Motion for Judgment on the Pleadings, Heart & Soil's ability to plead a contract counterclaim does not rest on whether Plaintiff or Defendant ultimately bears the burden of proof on Plaintiff's quiet hours claim.

Nevertheless, Heart & Soil addresses the argument to avoid any assertion that it agrees with Plaintiff's position. Plaintiff relies on *Van Patten* for the proposition that consent is always an affirmative defense and has no bearing on a *prima facie*

---

U.S. Dist. LEXIS 31777, but that appears to be a combination of two different citations for this case. two citations are 2011 U.S. Dist. LEXIS 136506 and 2011 LX 31777.

TCPA claim. *Van Patten*'s affirmative-defense rule does not extend – by its text or by its logic – to Section 227(c) "telephone solicitation" claims of the type Plaintiff pleads here. *Van Patten* arose under 47 U.S.C. § 227(b)(1)(A), the TCPA provision that prohibits calls made with automatic telephone dialing systems (ATDS) and prerecorded-voice calls to wireless numbers without prior express consent. *Van Patten*, 847 F.3d at 1041. The Ninth Circuit's holding was expressly grounded in a single source: the FCC's 2008 Declaratory Ruling, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (Jan. 4, 2008) ("2008 Order"). *Van Patten*, 847 F.3d at 1044. *McCurley*, on which Plaintiff also relies, is also a § 227(b)(1)(A)(iii) ATDS/prerecorded voice case that relied on *Van Patten*. 331 F.R.D. at 149–50.

The FCC's 2008 Order addressed a discrete question: whether "autodialed and prerecorded message calls" to wireless numbers by a creditor in connection with an existing debt are made with "prior express consent" within the meaning of § 227(b)(1)(A). 23 FCC Rcd. at 559 ¶ 1. The Commission's burden-allocation holding was tied to that subsection's "prior express consent of the called party" exception. *Id.* at 564–65 ¶¶ 9–10. The FCC took pains to make clear that its 2008 ruling did *not* address Section 227(c)'s telephone-solicitation rules at all because the debt collection calls at issue in that case were not telephone solicitations. 23 FCC Rcd. at 565 ¶ 11 ("calls solely for the purpose of debt collection are not telephone solicitations" and "are not subject to the TCPA's separate restrictions on 'telephone solicitations.'") (footnote omitted). Therefore, there is no basis to reflexively extend the FCC's conclusions about burden of proof in debt collection calls using an ATDS under § 227(b) to the entirely separate question of whether a text message constitutes a "telephone solicitation" under § 227(c). The 2008 Order—and *Van Patten*'s holding derived from it—speaks only to the former.

Section 227(c) operates differently that section 227(b). Section 227(c) creates

a private right of action only for persons who "received more than one telephone call within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection*." 47 U.S.C. § 227(c)(5) (emphasis added); *see also In re: Rules & Regs. Implementing the TCPA*, 7 FCC Rcd 8752, 8780 (1992) ("A consumer may also file suit in state court if he or she has received more than one telephone call within any 12-month period by or on behalf of the same company in violation of the guidelines for making telephone solicitations."). Here, the relevant regulation, 47 C.F.R. § 64.1200(c)(1), prohibits only "*telephone solicitation*[s]" before 8 a.m. or after 9 p.m. Therefore, a *prima facie* showing requires a Plaintiff to prove that they received not merely *any call*, but rather a *telephone solicitation* before 8 a.m. or after 9 p.m.

Unlike § 227(b)'s "prior express consent" exception—which carves consented calls out of a default prohibition against making *any call* using an ATDS or pre-recorded voice—§ 227(a)(4)'s "prior express invitation or permission" is *definitional*: a call made with such permission or made in the context of an established business relationship, is *not a telephone solicitation in the first place*. That definitional structure makes the absence of permission and the absence of an EBR elements of Plaintiff's *prima facie* case, not affirmative defenses. To establish the regulatory predicate—that what he received was a "telephone solicitation" within the meaning of § 64.1200(c)(1)—Plaintiff must plead and establish (a) that the messages were *not* sent with his prior express invitation or permission, and (b) that he had no established business relationship with Heart & Soil. *See King v. Bon Charge*, 814 F. Supp. 3d 497 (D. Del. 2025) (dismissing plaintiff's quiet-hours claim through a careful comparative analysis of the consent requirements); *see also Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *1–2 (D. Ariz. Jan. 12, 2023) (sustaining a § 227(c) DNC claim only after noting that "Plaintiff 'at no time' consented to receive the calls. Nor did she have a

preexisting relationship with Defendant or 'express any interest in Defendant's insurance policies, products, or services.'").

**B. The Motion's theory of liability invents a time-specific consent requirement that appears nowhere in the TCPA, the FCC's implementing regulation, or any Ninth Circuit decision.**

Setting aside the burden of proof questions, it is also worth identifying the legal proposition the Motion actually advances—because that proposition is plainly wrong. The Motion's framing is that Plaintiff's opt-in did not authorize the messages *at the specific times* they were sent. Mot. at 15 ("[E]ven if Plaintiff's opt-in constituted valid consent to receive marketing texts, it does not follow that it authorized receipt of those texts during quiet-hours periods specifically prohibited by federal regulation."). The Complaint maps onto that same theory in paragraph 21: Plaintiff alleges that he "never signed any type of authorization permitting or allowing Defendant to send them telephone solicitations before 8 am or after 9 pm." Compl. ¶ 21.

That theory is foreign to the statute and to the regulation. Neither 47 U.S.C. § 227(a)(4) nor 47 C.F.R. § 64.1200(c)(1) imposes any *time-specific* consent requirement on SMS messages generally. The quiet hours regulation applies only to telephone solicitations. 47 C.F.R. § 64.1200(c)(1). The definition of "telephone solicitation" omits any call (or text) made "to any person with that person's prior express invitation or permission" or with an "established business relationship"—full stop. 47 U.S.C. § 227(a)(4)(A). The Motion's invented requirement—that consent must extend to a specific time-of-day window to be effective—has no foothold in any FCC order either. Instead, the concept was expressly rejected by the FCC. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, ¶ 210 (explicitly declining to require companies to adhere to consumers' preferred "acceptable calling times" for callers who had provided consent).

Plaintiff's invented consent requirement is the controversy framed by

Counterclaim I. Heart & Soil seeks a declaration that—properly construed—§ 64.1200(c)(1) requires a *telephone solicitation*, which definitionally requires *both* the absence of prior express invitation or permission *and* the absence of an EBR—and that "consent" under § 227(c) is not the heightened, "signed", time-bounded creature the Complaint and Motion invents from whole cloth. That declaration is forward-looking and addresses the operation of Heart & Soil's SMS marketing program, not just the merits of Plaintiff's individual claim. It is not a "mirror image" of any affirmative defense.

## II. COUNTERCLAIM I STATES A CLAIM FOR DECLARATORY RELIEF AND SHOULD NOT BE STRICKEN UNDER RULE 12(F).

Plaintiff's argument is, in substance, a *per se* rule: "Courts in this District dismiss declaratory counterclaims that do no more than mirror the complaint or restate affirmative defenses." Mot. at 5. That is not the law in this Circuit. The Ninth Circuit has allowed district courts "broad discretion as long as it furthers the Declaratory Judgment Act's purpose of enhancing 'judicial economy and cooperative federalism,'" *R.R. St. & Co. Inc. v. Transport Ins. Co*., 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Employees Inc. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998)). The Ninth Circuit has articulated a non-exhaustive list of considerations that may be relevant, including whether maintaining jurisdiction over a declaratory judgment claim would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties. *Dizol*, 133 F.3d at 1225 & n.5.

None of these factors counsel in favor of dismissing the counterclaim. The

questions at issue in the declaratory judgment claim are federal, not state issues. Therefore, there is no risk of needless determinations of state law issues or entangling the federal and state court systems. The declaratory judgment claim is not meant to promote forum shopping, but rather to avoid the duplicative litigation that the Hindi Firm has pursued while evading this dispositive legal issue. Addressing the claim would help to resolve all aspects of the controversy in this single proceeding and clarify the legal relations between Heart & Soil SMS subscribers and those that seek to bring quiet hour claims. It would not create an unjust res judicata advantage, but would serve to provide clarity for businesses who have been targeted by the serial litigation threat of the Hindi Firm's quiet hours campaign.

The decisions Plaintiff cites actually confirm that dismissal is discretionary, not mechanical. *Stickrath* squarely adopts the discretionary "useful purpose" framework. *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008) ("it is not always appropriate to strike declaratory judgment counterclaims simply because they concern the same subject matter or arise from the same transaction as the complaint. The court should focus on whether the counterclaims 'serve any useful purpose'") (citing cases); *see also J&J Sports Prods. v. Sally & Henry's Doghouse Bar & Grill LLC*, No. 13-cv-2924-BAS-KSC, 2016 WL 1323464, at *2 (S.D. Cal. Apr. 4, 2016) ("question is whether declaratory relief would serve some useful purpose") (*citing McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966)).

The "useful purpose" inquiry is informed by the practical posture in which the question arises. Heart & Soil is not a one-off defendant in an isolated dispute. The Complaint here is one of at least 583 substantively identical TCPA quiet-hours class actions filed by Plaintiff's counsel and the Hindi Firm in federal court. Carter MJP Decl. ¶ 24. For ecommerce companies where it is standard practice to obtain consent before sending SMS, the validity of these cases turns on the same legal question: does

the FCC's quiet-hours rule apply to messages sent to consumers who have given prior express consent or have an established business relationship? The volume, jurisdictional spread, and procedural pattern of these cases is documentary evidence that the controlling legal question recurs frequently and is, as a matter of structural posture, not getting answered.

Plaintiff's Motion to Dismiss appears to be calibrated to defeat the protection that Rule 41(a)(2) affords a defendant who has pleaded a counterclaim, which provides "the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). That protection exists, in part, because when lawyers file frivolous cases in mass with the intention of extracting settlements, they have a powerful incentive to avoid having the underlying legal questions reach merits resolution—leaving defendants exposed to repeat invocation of the same legal theory by other plaintiffs.

Preventing this outcome is a sufficiently "useful purpose" to retain Counterclaim I. "[A]voiding multiple lawsuits in multiple courts is a legitimate reason for bringing [a] federal declaratory judgment action." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 399 (5th Cir. 2003) (*citing Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776-77 (5th Cir. 1993)).

Further, the Motion should also be denied because the declaration it seeks is broader than the relief Heart & Soil would necessarily obtain by defeating Plaintiff's individual claim. Successful defense of the TCPA claim would establish that Plaintiff's claim fails—that messages sent to Bathersfield did not violate § 64.1200(c)(1). The declaration that any text message sent "to consumers who have provided prior express written consent to receive automated marketing messages through Heart & Soil's SMS/MMS Mobile Messaging Program" is definitionally excluded from the definition of "telephone solicitation" and does not violate the quiet-hours rule is broader. CC ¶ 26. Therefore, while closely aligned, Counterclaim

I is not "entirely commensurate with the relief sought through [the] other causes of action." *Glendora Courtyard, LLC v. BBVA Compass Bancshares Inc.*, No. 16-cv-1189-JLS-KSC, 2017 WL 960431, at *8 (S.D. Cal. Mar. 13, 2017) (quoting *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009)).

Finally, the Motion sets forth the standard for a Motion to Strike under Rule 12(f), *see* Mot. at 4, though it fails to advance any arguments in support of the motion in the body of the brief, and should therefore be deemed waived. In any event, a Motion to Strike under Rule 12(f) is not a proper means of dispensing with an entire claim, *see, e.g., Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (2010), and the cases cited by Plaintiff offer no support for the relief requested. In both *Rosales v. Cty. of San Diego,* 511 F.Supp.3d 1070, 1097 (S.D. Cal. 2021) and *Suarez v. Cty. of San Diego,* 3:20-cv-00456-WQH-BGS, 2021 WL 615047, at *10-11 (S.D. Cal. Feb. 16, 2021), the Court denied motions to strike exhibits attached to the complaint. The Declaratory Judgment counterclaim articulates facts regarding the consent that Plaintiff provided to Heart & Soil and provides critical context regarding the campaign of quiet hours litigation being pursued by the Hindi Firm. These factual allegations are not "spurious issues" that "have no possible relationship to the controversy", but rather are the type of highly germane issues that are pertinent to the achieving a just, and speedy resolution of this case. *Citizens Ins. Co. of Am. v. Chief Dig. Advisors*, 578 F. Supp. 3d 1113, 1118 (S.D. Cal. 2020); *see also Suarez,* 2021 WL 615047, at *10-11. Further, even if the Motion to Strike were procedurally proper, it should not be granted here because Plaintiff has demonstrated no prejudice. *See id.* at *10.

## III. PLAINTIFF HAS NOT ESTABLISHED THAT THE BREACH OF CONTRACT COUNTERCLAIM SHOULD BE DISMISSED.

### A. Plaintiff's First Argument Mischaracterizes the Case Law Upon Which It Relies

Plaintiff seeks to have the breach of contract counterclaim dismissed on a

variety of grounds, none of which warrant the requested relief. Plaintiff first argues that the claim should be dismissed under federal law because the TCPA does not provide for a right to indemnification or contribution citing *Lemieux v. Lender Processing Ctr.*, No. 16-cv-01850-BAS-DHB, 2018 WL 637945 (S.D. Cal. Jan. 31, 2018). *Lemieux* not only fails to support the proposition that a state law breach of contract claim should be dismissed, but it exposes the error of Plaintiff's argument. In *Lemieux*, Hightechlending, Inc. ("Hightech"), a Defendant in a TCPA brought claims against third-parties who had provided it with lead generation services, claiming they were responsible for violations of the TCPA. Hightech brought claims for "equitable indemnity, contribution and declaratory relief" against all third-party defendants and a separate "state law breach of contract claim" against two defendants. *Id.* at *2 - * 3. The Court rejected the theory that the TCPA provided an implied right for indemnity or contribution and dismissed on this theory. *Id.* at *4 - *8. It then declined to exercise supplemental jurisdiction over the state law breach of contract claim. *Id.* at *9 - *10. In short, this case rejects a theory of federal right to indemnification against third parties – a theory that Heart & Soil never asserted. The case has nothing to do with the actual claim that Heart & Soil is pursuing – state law breach of contract claims. *Lemieux* does not stand for the sweeping proposition that "federal law governs regardless of the label attached to the claim," as the Motion erroneously asserts. Mot. at 7.

The other cases cited by Plaintiff are equally irrelevant but even more far afield. *See* Mot. at 8; *Gonzalez v. Harris Farms, Inc.,* No. 1:14-cv-00038-LJO-SAB, 2014 WL 6981429, at *3-5 (E.D. Cal. Dec. 9, 2014) (no express or implied right to contribution from third parties for a Defendant who has been found liable under the Fair Credit Reporting Act); *Tan v. Quick Box, LLC*, No. 3:20-cv-01082, 2021 WL 2473948, at *5-6 (S.D. Cal. June 16, 2021) (no right to contribution or indemnity under RICO). None of these cases foreclose a contract-based counterclaim against

the Plaintiff.

**B. Plaintiff's Public Policy Argument is Equally Flawed.**

Plaintiff next argues that entertaining Heart & Soil's counterclaims would "chill" consumer enforcement of the TCPA, Mot. at 11, and that the breach of contract counterclaim should be dismissed because "California law does not ordinarily read indemnity clauses to cover first-party litigation costs between the contracting parties themselves; such clauses are presumptively limited to third-party claims unless the contract uses specific language clearly extending them to first-party fees." Mot. at 9. These public policy arguments both fail.

As a preliminary matter, the Terms of Service provides for application of Texas law, not California. *See* Terms of Service, Jurisdiction, Governing Law, and Resolution of Disputes. Despite this, Plaintiff fails to acknowledge the choice of law provisions much less explain why the cited California cases are dispositive of the breach of contract claim.

California "reflect[s] a strong policy favoring enforcement of [choice of law] provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-65 (Cal. 1992). Here, Heart & Soil is based in Texas and administered its SMS program from its headquarters in Dripping Springs, Texas, about 25 miles outside of Austin. Therefore, Texas has a substantial relationship to the dispute. Plaintiff's Motion fails to show that application of Texas law would violate a fundamental policy of California. *See, e.g., Preston v. Navy Fed. Credit Union*, No. CV 24-8372 JGB (DTBx), 2026 WL 1013508, at *11 (C.D. Cal. Mar. 31, 2026) (Plaintiff must "describe the policies in detail or specify how they differ").

Texas law permits recovery of "reasonable attorney's fees from an individual . . . in addition to the amount of valid claim and costs, if the claim is for. . . (8) an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001; *see also Vianet Grp. PLC v. Tap Acquisition, Inc.,* No. 3:14-CV-3601-B, 2016 WL 4368302, at *9 (N.D.

Tex. Aug. 16, 2016) (if Plaintiff established right to recover anything under breach of contract theory related to an earlier case that had been filed in the wrong venue, the Plaintiff could also recover their fees for prosecuting that breach claim pursuant to § 38.001); *Cox v. Wilkins*, No. 03-05-00110-CV, 2006 WL 821202, at *6 (Tex. App. Mar. 31, 2006) ("[b]ecause section 38.001(8) of the civil practices and remedies code specifies that a party 'may recover reasonable attorney's fees . . . if the claim is for an oral or written contract,' the award is not discretionary"); *Hoelscher v. Kilman*, No. 03-04-00440-CV, 2006 WL 358238, at *3-4 (Tex. App. Feb. 16, 2006) (trial court abused discretion in not awarding attorney fees).[2]

Moreover, while some courts have held that recovery of damages is not permitted for beach of a venue provision when specific performance has been granted, Heart & Soil has not identified dispositive authority foreclosing damages when a party has elected damages in lieu of specific performance. *See Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 658 (Tex. App. 2004) (plurality opinion) (declining to find that a breach of venue provision could be enforced through damages where the motion to transfer venue had already been granted) (citing *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex. Ct. App. 1994), writ denied per curiam, 907 S.W.2d 452, 38 Tex. Sup. Ct. J. 554 (Tex. 1995); *see also Tex. Ed Tech Sols., LLC v. Authentica Sols., LLC,* Civil Action No. 1:20-cv-00151-SDG, 2021 WL 1222296, at *2-3 (N.D. Ga. Apr. 1, 2021) (while the Texas Supreme Court has not addressed the issue, it would apply the logic of *Tribble* to prevent recovery of damages where an election of remedies had already occurred).

More fundamentally, Heart & Soil's counterclaim does not merely seek to recover attorney fees for the failure to honor the arbitration provision but rather seeks to vindicate an array of contractual rights. These include the representation and

[2] Heart & Soil is mindful of – and intends to satisfy – the requirement of presenting the claim for attorney fees to the Plaintiff at least 30 days prior to trial. Tex. Civ. Prac. & Rem. Code § 38.002.

warranty that the Plaintiff will "comply in good faith the terms of this Agreement" and that he was "choos[ing] to receive SMS/MMS messages from [Heart & Soil] by affirmatively opting into the Program through online or application-based enrollment forms" and that he was consenting to "receive marketing text messages." Further, Plaintiff contractually agreed that if, "at any time" he wished "to stop receiving messages" from Heart & Soil, he would "text 'STOP' or 'UNSUBSCRIBE' to the number associated with the specific SMS use case you opted into." By failing to opt-out of continued text messaging if bothered by the time of their delivery, and instead pursuing a claim based on an allegation he did not consent to receive the text messages at issue, he has breached the contract.

Heart & Soil is a small business. Being forced to defend a class action in federal court imposes material costs on the company. Heart & Soil, therefore, seeks recovery not only of attorney fees and costs, as Plaintiff's Motion presumes, but all costs associated with litigating in a forum and in a manner prohibited by the Terms of Service, as well as other damages to be proven at trial. Counterclaim, ¶ 31. These costs would include, but are not necessarily limited to, Heart & Soil employee time and resources necessary to investigate Plaintiff's claims and to participate in defending a putative class action filed in California rather than through an individual claim filed in arbitration. By dint of pursuing a class action that claims millions of dollars in damages, Plaintiff has ensured that multiple executives of the company have had to divert, and will continue to divert, time and attention to deciding how the company will respond, keeping them from investing that time in other company priorities. These costs are real for the business – and directly and proximately caused by the Plaintiff's decision to file a class action in California. They should be recoverable and not simply chalked up as a cost of doing business.

Three decisions in TCPA cases with analogous facts provide a basis to reject Plaintiff's public policy contentions. These cases converge on one conclusion: where

a TCPA plaintiff has manufactured TCPA claims, public policy *supports* — not bars — allowing counterclaims to proceed. First, in *D'Ottavio v. Slack Techs.*, No. 1:18-cv-09082-NLH-AMD, 2022 WL 15442211 (D.N.J. Oct. 26, 2022), a serial TCPA plaintiff opted into Slack's SMS program, clicked "SEND LINK" 1,590 times to send himself download links, then sued Slack alleging those messages were unsolicited. *Id.* at *1-2, *6. The court entered default judgment on Slack's breach-of-contract counterclaim and recognized that the same conduct supports an implied-covenant of good faith contract theory: "[T]he Court cannot [discount] any possible breach of the implied covenant from a cynical scheme, such as this one, in which one of the contracting parties seeks to extort money from the other through a baseless lawsuit. Plaintiff's actions as admitted were the antithesis of fair dealing and acting in good faith." *Id.* at *6-7. In *D'Ottavio*, the Court ultimately rendered judgment for the Defendant in the amount of $160,502.37. *See D'Ottavio v. Slack Techs.*, No. 1:18-cv-09082-NLH-AMD, Opinion (ECF No. 66) (D.N.J. Dec. 27, 2022).

Looking to Texas, the jurisdiction that governs the breach of contract claim, case law there also supports the conclusion a counterclaim against a TCPA plaintiff that is knowingly pursuing baseless TCPA claims is appropriate. In *Estrada v. Aragon Adver., LLC*, No. 4:23-cv-3407, 2024 WL 5059166 (S.D. Tex. Dec. 10, 2024), the plaintiff brought a TCPA class action; the defendants counterclaimed for fraud and fraud by nondisclosure, alleging that the plaintiff had opted in to the program using a false name and "pretend[ed] to be interested in [defendants'] products and services, thereby driving up the call count … to extract a higher settlement payout for his manufactured TCPA claim." *Id.* at *1. Pressing the same "chill enforcement" argument Plaintiff makes here, the plaintiff moved to dismiss. The Court rejected the argument:

[T]he counterclaim here . . . concerns whether Plaintiff provided fraudulent consent in order to abuse federal statutes and the judiciary for his own pecuniary gain.

Allowing parties to smoke out such abuse would indeed further, not frustrate, public policy.

*Id.* at *4. So too here. *Franklin v. Upland Software, Inc.*, No. 1:18-CV-00236-LY, 2019 WL 433650 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019), further undermines the "public policy" protection Plaintiff seeks to invoke. A serial TCPA plaintiff sued Upland; Upland counterclaimed for common-law fraud and fraud by nondisclosure, alleging the plaintiff had solicited the very texts he sued over. *Id.* At *3-4. The court sustained both counterclaims, holding that the defendant's expenditure of "employee time and resources … based on [the plaintiff's] representations" suffices to plead damages. *Id.* at *4.

These cases, and the breadth of the damages sought by Heart & Soil, provide sufficient basis to deny the Motion to Dismiss, which attacks only isolated parts of the Counterclaim and does so by applying the wrong state's law.[3]

### 1. The FAA Does Not Limit Heart & Soil's Ability to Elect Its Remedy

Bathersfield next argues that the "FAA supplies a specific enforcement mechanism" and that, because a party "may petition for an order directing arbitration to proceed," that the counterclaim should be dismissed. Mot. at 12. This argument is flawed for at least two reasons.

First, the argument erroneously assumes that the counterclaim only alleges a breach of the arbitration provision. As discussed above, it does not. The counterclaim seeks recovery for the multitude of breaches that have occurred, not simply for the failure to arbitrate.

Second, while the FAA *allows* a party to petition to enforce an arbitration agreement, Plaintiff offers no support for the proposition that it forecloses other

[3] If the Court finds any defect in the counterclaim, *Franklin* and *Estrada* suggest that leave to amend to plead fraud may be appropriate.

remedies. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may* petition. . . ."). In interpretating Section 2 of the FAA, the Supreme Court has made clear that arbitration provisions should be treated as other contracts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). And, of course, election of remedies is a standard part of contract law in Texas. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980) (recognizing election of remedies as an established doctrine).

Plaintiff cites four cases, none of which analyze, much less hold, that the ability to petition for specific performance is an exclusive remedy. *See* Mot. at 12 (citing *Fraher v. Verizon Wireless Servs., LLC*, No. 21-cv-00763-H-JLB, 2021 WL 2525732, (S.D. Cal. June 21, 2021); *Anderson v. Credit One Bank*, No. 16cv3125-MMA (AGS), 2017 WL 2258064 (S.D. Cal. May 23, 2017);[4] *Tovar v. GC Servs. Ltd. P'ship,* No. 3:21-CV-1597-CAB-BGS, 2021 WL 5989944, (S.D. Cal. Dec. 17, 2021); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)). Plaintiff's other cases also fail to support the assertion that the FAA forecloses the ability to seek breach of contract damages. *Unite Here Local 30 v. Omni Hotels Mgmt. Corp.*, No. 19cv830-MMA (LL), 2019 WL 6118461, (S.D. Cal. Nov. 18, 2019), is inapposite. There, the defendant elected to move to compel arbitration. Having successfully done so, the court denied attorney fees based that were sought based on the court's "inherent, discretionary powers." *Id.* at *8-9. The fact pattern repeats in *Local SEIU, Local 2028 v. Rady Children's Hosp.*, No. 08cv486 BTM(AJB), 2008 WL 5221060, at *3 (S.D. Cal. Dec. 12, 2008), where the court denied attorney fees for failing to submit to arbitration in "bad faith" after granting the defendant's motion to compel arbitration.

---

[4] For the court's convenience, Defendant notes that the Motion cites the case as 2017 U.S. Dist. LEXIS 47540, but that appears to be a combination of two different citations for this case: 2017 U.S. Dist. LEXIS 79092 and 2017 LX 47540.

None of these cases stand for the proposition that a party who elects to pursue damages in lieu of specific performance is foreclosed from doing so. It is, after all, the election of remedies doctrine that typically supplies the reason that damages are unavailable when the non-breaching party has enforced a forum selection clause. The rule is grounded in the concern that a party who has already obtained the bargained-for performance should not also recover the monetary equivalent of that performance. *See, e.g.*, *Texas Ed Tech Sols., LLC v. Authentica Sols., LLC*, No. 1:20-CV-00151, 2021 WL 1222296 (N.D. Ga. Apr. 1, 2021); *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 332 (D. Del. 2017); John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*, 66 Santa Clara L. Rev. 94, 103–04 (2026). That rationale, however, has no purchase where the non-breaching party has *forgone* the specific-performance remedy. *See* Coyle & Monestier, 66 Santa Clara L. Rev. at 105–08 (recognizing that the election concern presupposes a prior order compelling performance, but that in either case the doctrine should "present no obstacle to the awarding of contract damages"). As Plaintiff's own Motion repeatedly emphasizes, Heart & Soil "has not filed a motion to compel arbitration or taken any other action to move this dispute to arbitration." Mot. at 3; *see also id.* at 12, 14 (faulting Heart & Soil for "ma[king] no effort to actually use arbitration").[5] This is sufficient grounds to *remove* any obstacle that election of remedies might otherwise erect to seeking damages.[6]

---

[5] For clarity, while paragraph 32 of the Counterclaim discusses that Heart & Soil would be entitled to "specific performance of the arbitration agreement," Heart & Soil has elected to file a Motion for Judgment on the Pleadings and is not pursuing a motion to compel arbitration.

[6] As Professor Tanya Monestier has explained, "[a] valid legal promise must have legal consequences for its breach. If damages are not awarded for breaching a forum selection clause — for specifically doing what one promised *not to do* — the promise is an illusory one that can be breached with no legal consequences." Tanya J. Monestier, *Damages for Breach of a Forum Selection Clause*, 58 Am. Bus. L.J. 271, 300 (2021). Plaintiff's alleged conduct breaches many of them. If, as Plaintiff's Motion suggests, the worst that can happen is a ticket to arbitration "there is no real disincentive to breach." *Id.* at 300. Monestier's framework also disposes of Plaintiff's American Rule argument (Mot. at 15–16): when the contractual breach *is* the filing of the

The closest Plaintiff comes to support its position is *Glob. Private Funding, Inc. v. Empyrean W., LLC*, No. CV 13-04622 DDP (MANx), 2015 WL 3751769 (C.D. Cal. June 16, 2015),[7] which Plaintiff represents stands for the proposition that "the court refused to enforce a contractual non-arbitration fee penalty where the party seeking fees made no effort to arbitrate, holding that the policy benefits favoring arbitration are 'vitiated' when a party invokes such a clause only to obtain attorney's fees.'" Mot. at 14. But, that is not at all the holding of *Global Private Funding*. In that case, a Defendant sought recovery of attorney fees through a counterclaim in a federal court action for the costs associated with an earlier, nearly-identical state court action. *Id*. at *1. In the state court action, the Defendant had filed motions and demurrers but apparently not sought to compel arbitration. *Id*. The court found that the Defendant was not entitled to summary judgment on its counterclaim because there was a concern that Defendant had "inconsistently invoked" the arbitration provisions and created questions of waiver. *Id*. at *2. The Court did not dismiss the counterclaim, nor did it find waiver as a matter of law. Instead, the court provided that if Defendant wanted to pursue damages for both the state and federal court proceedings, it could invoke the arbitration provision. *Id*. at *3. Thus, while the Court's summary judgment decision frames a potential waiver concern as a reason to deny summary judgment, the court was not confronted with and did not evaluate arguments regarding election of remedies, nor did it hold that the Defendant's breach of contract theory failed as a matter of law.

## CONCLUSION

Plaintiff's Motion presents no adequate basis to dismiss either counterclaim at the pleading stage. Counterclaim I asks the Court to resolve a recurring and

---

suit, the litigation costs incurred in responding are *direct* damages, not consequential fees "incident to" a separate recovery. *Id.* at 310–13.

[7] For the court's convenience, Defendant notes that the Motion cites the case as 2015 U.S. Dist. LEXIS 81744, but that appears to be a combination of two different citations for this case: 2017 U.S. Dist. LEXIS 78011 and 2017 LX 81744.

consequential legal question that as best as Heart & Soil has discerned has yet to be pressed to merits resolution across the Hindi Firm's 583 substantively identical filings. The Declaratory Judgment Act exists precisely to resolve that kind of controversy, and the Ninth Circuit's multi-factor framework supports entertaining the claim.

Counterclaim II pleads several discrete breaches of the Terms of Service. None of the four grounds the Motion advances for dismissing the contract counterclaim reaches all of those theories. *Lemieux* addresses an asserted federal right of indemnity for TCPA liability, not a state-law breach of contract for breach of a bundle of restrictive covenants. The public-policy theory misapplies California law to a contract governed by Texas law and ignores the Texas authorities and TCPA-specific decisions that support recognizing breach-of-contract counterclaims in this posture. The FAA theory treats a permissive statutory remedy as exclusive without providing any support; election of remedies poses no bar where, as Plaintiff's own Motion repeatedly emphasizes, Heart & Soil has forgone specific performance and pursues only damages.

For the reasons set forth above, Plaintiff's Motion to Dismiss should be denied in its entirety. In the alternative, if any portion of the Motion is granted, leave to amend should be granted under Rule 15(a)(2).

DATED: June 18, 2026

Respectfully Submitted,

BUCHALTER LLP

By: */s/ Artin Betpera*

ARTIN BETPERA
Attorneys for Defendant
HEART & SOIL SUPPLEMENTS, LLC