**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CHARLES BATHERSFIELD, individually and on behalf of all those similarly situated,

Plaintiff,

vs.

HEART & SOIL SUPPLEMENTS, LLC, a Texas limited liability company,

Defendant.

**CASE NO. 3:26-cv-01124-GPC-SBC**

**ORDER:**

- **GRANTING PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIM I**
- **GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM II**

**[ECF No. 12]**

On May 22, 2026, Plaintiff filed a Motion to Dismiss Defendant's Counterclaims Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, to Strike Counterclaim I Pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 12. The motion has been fully briefed. ECF Nos. 12, 18, 20**.** The Court finds the matter suitable for decision on the papers. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Strike Counterclaim I without leave to amend and **GRANTS** Plaintiff's Motion to Dismiss Counterclaim II with leave to amend.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purpose of resolving the instant motion.

This case arises from marketing text messages that Defendant and Counter-Complainant, Heart & Soil Supplements, LLC ("Heart & Soil"), sent to Plaintiff and Counter-Defendant Charles Bathersfield. ECF No. 1 ("Compl.") ¶¶ 7–8, 16.[1] The Telephone Consumer Protection Act ("TCPA") and its implementing regulations prohibit "telephone solicitations to residential telephone subscribers before 8 am and after 9 pm." *Id.* ¶ 13 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(1)). Plaintiff alleges that Heart & Soil sent him marketing text messages "on or about November 28, 2025[,] and January 15, 2026" at 6:11 a.m. and 5:14 a.m., respectively, in Plaintiff's local time. *Id.* ¶¶ 14–15. The messages were meant to "advertise, promote, and/or market Defendant's property, goods, and/or services." *Id.* ¶ 17. Plaintiff further alleges that he "never signed any type of authorization" that permitted Defendant to send the text messages (or "telephone solicitations") during those prohibited hours. *Id.* ¶ 21.

Plaintiff brings this putative class action on behalf of himself and "all other similarly situated persons" who received more than one marketing text message from Heart & Soil within a 12-month period before 8 a.m. or after 9 p.m. local time. *Id.* ¶ 23. Plaintiff seeks injunctive relief and statutory damages. *Id.* ¶ 6.

## PROCEDURAL HISTORY

On February 23, 2026, Plaintiff filed this putative class action alleging a violation of the TCPA's quiet-hours restriction, 47 C.F.R. § 64.1200(c)(1). Compl. ¶¶ 34–40. On April 17, 2026, Defendant answered, asserting eleven affirmative defenses and two counterclaims. ECF No. 6. In Counterclaim I, Defendant seeks a

[1] The Court cites each document's own pagination. If a document lacks internal page numbers, the Court relies on the CM/ECF pagination at the top of the page.

judgment declaring that (1) the Federal Communications Commission's ("FCC") quiet-hours rule, 47 C.F.R. § 64.1200(c)(1), "applies only to 'telephone solicitations' as defined in 47 U.S.C. § 227(a)(4)," (2) "any text message sent to a consumer who has provided prior express invitation or permission to receive such messages does not constitute a 'telephone solicitation' within the meaning of 47 U.S.C. § 227(a)(4)," and (3) Heart & Soil "did not violate, and is not violating, 47 C.F.R. § 64.1200(c)(1) by sending text messages to consumers who have provided prior express written consent to receive automated marketing messages through Heart & Soil's SMS/MMS Mobile Messaging Program." ECF No. 6 at 36. In Counterclaim II, Defendant alleges that Plaintiff breached the Terms of Service by filing this putative class action in court rather than in individual arbitration and seeks damages along with attorney's fees. *Id.* at 37–38. On May 22, 2026, Plaintiff moved to dismiss Counterclaims I and II under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike Counterclaim I under Rule 12(f). ECF No. 12.[2] On June 19, 2026, Defendant filed its opposition. ECF No. 18. On July 3, 2026, Plaintiff filed a reply. ECF No. 20.

## LEGAL STANDARD

Plaintiff moves to dismiss Defendant's counterclaims under Rule 12(b)(6) or, in the alternative, to strike Counterclaim I under Rule 12(f).

### I. Federal Rule of Civil Procedure 12(b)(6)

Courts evaluate a counterclaim under the same standard as a complaint. *See* Fed. R. Civ. P. 8(a)(2), 12(b)(6); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 947 (N.D. Cal. 2010). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair

[2] Unless otherwise noted, "Rule" and "Rules" refer to the Federal Rules of Civil Procedure.

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (citation modified).

When reviewing a Rule 12(b)(6) motion, the court "must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Although the general rule prohibits a district court from considering evidence outside the pleadings in reviewing a motion to dismiss, it may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Leave to amend

may therefore be denied when amendment would be futile. *See id.*; *Schreiber,* 806 F.2d at 1401.

**II. Federal Rule of Civil Procedure 12(f)**

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *J & J Sports Prods., Inc. v. Nguyen*, No. 13-CV-02008-LHK, 2014 WL 60014, at *8 (N.D. Cal. Jan. 7, 2014) (citation modified).

The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "When ruling on a motion to strike," a court "must view the pleading under attack in the light most favorable to the pleader." *Novick v. UNUM Life Ins. Co. of Am.*, 570 F. Supp. 2d 1207, 1208 (C.D. Cal. 2008) (quoting *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

Rule 12(f) permits a court to strike a pleading "in whole or in part," including an answer and counterclaim that are "redundant within the meaning of" Rule 12(f). *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10CV0541-GPC-WVG, 2013 WL 5674834, at *2, *6 (S.D. Cal. Oct. 16, 2013) (citation modified).

## DISCUSSION

Plaintiff argues that the Court should (1) strike or dismiss Counterclaim I—a request for a declaratory judgment—because it duplicates Plaintiff's TCPA claim and Defendant's affirmative defenses, and (2) dismiss Counterclaim II—a breach of contract claim—because it improperly treats Defendant's litigation costs as damages. ECF No. 12-1 at 1–3. The Court addresses each counterclaim in turn.

### I. Counterclaim I (Declaratory Judgment)

Plaintiff argues that Defendant's request for a declaratory judgment (Counterclaim I) should be dismissed or stricken because it is a "redundant mirror image" of Plaintiff's TCPA claim and Defendant's affirmative defenses. ECF No. 12-1 at 4.

The Declaratory Judgment Act grants district courts the discretion to grant or dismiss a request for declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); *see also* 28 U.S.C. § 2201(a); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). This relief aims "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (quoting *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966)). Thus, declaratory relief is appropriate when it "serve[s] a useful purpose in clarifying and settling the legal relations in issue" and "terminate[s] and afford[s] relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Ass'n v. Am.*

*Cas. Co. of Reading, Pa.*, 873 F.2d 229, 231 (9th Cir. 1989) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984)).

Exercising this discretion, courts in this Circuit have stricken declaratory counterclaims under Rule 12(f) "where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses." *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008); *see Loop Global, Inc. v. Everged LLC*, No. 3:26-cv-01086-GPC-MSB, 2026 WL 2271912, at *11 (S.D. Cal. Aug. 6, 2026) (striking a declaratory counterclaim that duplicated plaintiff's claim and defendant's affirmative defenses); *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 713–14 (N.D. Cal. 2022). Courts exercise this discretion only when "it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Stickrath*, 2008 WL 2050990, at *4 (citation modified).

Here, Defendant asks the Court to declare that (1) the FCC's quiet-hours regulation, 47 C.F.R. § 64.1200(c)(1), applies only to "telephone solicitations," (2) a text message sent with the recipient's "prior express invitation or permission" is not a "telephone solicitation" under 47 U.S.C. § 227(a)(4), and (3) Heart & Soil did not violate the FCC's quiet-hours rule by texting consenting consumers. ECF No. 6 at 36. Plaintiff argues that this counterclaim "simply re-packages the same merits position already embedded in Defendant's denials and affirmative defenses," and therefore it is "not a separate dispute warranting declaratory relief." ECF No. 12-1 at 4–5.

The Court concludes that Defendant's declaratory judgment counterclaim is redundant for the following reasons. Defendant's first declaration restates what both parties already assert: that the FCC's regulation prohibits telephone solicitations during quiet hours. Compl. ¶¶ 13, 35, 38; ECF No. 6 at 22. Defendant's second declaration presents the heart of the dispute between the parties: whether Plaintiff

must establish the absence of consent as part of his claim, or whether consent is an affirmative defense that Defendant must prove. *Compare* ECF No. 18 at 13–17, *with* ECF No. 20 at 2. This question is already before the Court through the Complaint, which alleges that Plaintiff never authorized the transmission of those text messages, Compl. ¶ 21, and through Defendant's First and Second Affirmative Defenses, which assert that a message sent with the recipient's prior express invitation or permission is not a "telephone solicitation." ECF No. 6 at 22.[3] Defendant's third declaration is simply the inverse of Plaintiff's claim that "Defendant violated 47 C.F.R. § 64.1200(c)(1) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the Class members before the hour of 8 a.m. or after the hour of 9 p.m. (local time at the called party's location)." Compl. ¶ 38. Accordingly, "there is a complete identity of factual and legal issues between" Counterclaim I and the Complaint, as well as between Counterclaim I and Defendant's First and Second Affirmative Defenses. *Stickrath*, 2008 WL 2050990, at *4 (citation modified).

Defendant argues that every relevant factor derived from *Brillhart v. Excess Insurance Co. of America* and articulated by *Government Employees Insurance Co. v. Dizol* "counsels in favor of entertaining" Counterclaim I. ECF No. 18 at 9, 18–19; *Brillhart*, 316 U.S. 491 (1942); *Dizol*, 133 F.3d 1220 (9th Cir. 1998). But those factors primarily address declaratory judgments that overlap with a pending state-court proceeding, and no parallel state-court action exists here. *See Brillhart*, 316 U.S. at 495; *Dizol*, 133 F.3d at 1225. Even if the factors applied, they would favor striking Counterclaim I for the following reasons.[4] First, Counterclaim I presents the same issues as Plaintiff's claim and Defendant's affirmative defenses and would not settle any part of the controversy that Plaintiff's claim leaves open. Second,

---

[3] The Court addresses these merits-based questions in its separate order on Defendant's Motion for Judgment on the Pleadings, ECF No. 14, filed on May 26, 2026.

[4] Plaintiff acknowledges, and Defendant does not dispute, that the factors concerning state-law issues, forum shopping, entanglement with the state courts, and the convenience of the parties are neutral. ECF No. 20 at 3; ECF No. 18 at 18–19.

Defendant relies on *Stickrath*'s observation that "it is not always appropriate to strike declaratory judgment counterclaims simply because they concern the same subject matter or arise from the same transaction as the complaint." ECF No. 18 at 19 (quoting *Stickrath*, 2008 WL 2050990, at *4). That is true, but Counterclaim I does more than share a subject matter with Plaintiff's claim. It presents the same issues and serves no useful purpose. *See Stickrath*, 2008 WL 2050990, at *4. Third, Defendant argues that Counterclaim I serves a useful purpose because it preserves the protection of Rule 41(a)(2) and avoids multiple lawsuits. ECF No. 18 at 20. Rule 41(a)(2) provides that, "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). According to Defendant, without that protection, Plaintiff could voluntarily dismiss this action before the Court reaches the merits of the suit. ECF No. 18 at 20. But whether a court may dismiss a declaratory counterclaim "does not depend upon Rule 41(a)(2), but rather upon a construction of the Federal Declaratory Judgment Act." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (footnote omitted); *see id.* at 342 n.3 (explaining that Rule 41(a)(2) "neither precluded nor required dismissal of the counterclaim since it could remain pending for independent adjudication"). And because Defendant has answered, Plaintiff cannot voluntarily dismiss this action without a court order or "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii), (a)(2). Finally, Defendant's reliance on *Sherwin-Williams Co. v. Holmes County* is misplaced. ECF No. 18 at 20. In *Sherwin-Williams*, the "declaratory judgment plaintiff" sued the very parties that had announced "their intention to file and pursue lawsuits in a number of state courts" and sought declaratory judgment to resolve the issues "common to the threatened lawsuits" and "avoid the repetitive litigation." 343 F.3d 383, 398–99 (5th Cir. 2003).

Here, the other consumers and litigants Defendant invokes are not before the Court, and a judgment in this case would *not* bind them. *See* ECF No. 20 at 4.

Defendant next argues that Counterclaim I is broader than Plaintiff's claim because it would reach every consumer who consented to Heart & Soil's messaging program and would resolve a question raised in other suits Plaintiff's counsel filed. ECF No. 18 at 19–21. But as explained above, a judgment here would bind only the parties to this case. *See Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 506 (9th Cir. 1980) ("It is an elementary rule of judgments that the disposition of a case affects only those who are actually parties to it."). As between the parties to this case, Counterclaim I adds nothing beyond what Plaintiff's claim and Defendant's First and Second Affirmative Defenses already allege.

Accordingly, the Court **GRANTS** the motion to strike Counterclaim I.[5] The Court **DENIES** leave to amend because amendment would not cure Counterclaim I's redundancy. *See DeSoto*, 957 F.2d at 658.

### II. Counterclaim II (Breach of Contract)

In Counterclaim II, Defendant alleges that Plaintiff breached Heart & Soil's Terms of Service by violating the following provisions of the agreement: (1) the class-action waiver, (2) the arbitration provision, (3) the indemnification provision, and (4) the warranty of accurate information provision. ECF No. 6 at 37–38.[6]

---

[5] Defendant argues that Rule 12(f) cannot be used to dispose of an entire claim. ECF No. 18 at 21 (citing *Whittlestone*, 618 F.3d at 974). In *Whittlestone*, the court held that Rule 12(f) does not authorize striking "claims for damages on the ground that such claims are precluded as a matter of law." 618 F.3d at 974–75. Counterclaim I is not a damages claim, and it is stricken not because it fails as a matter of law but because it is "redundant." Fed. R. Civ. P. 12(f). Defendant also contends that Plaintiff waived his motion to strike because Plaintiff "fails to advance any arguments in support of the motion." ECF No. 18 at 21. That contention fails because Plaintiff's motion argues that a duplicative declaratory counterclaim is "redundant" under Rule 12(f). ECF No. 12-1 at 4–7.

[6] The Terms of Service are not attached to the Answer and Counterclaims. The only attached exhibit is a letter from Postscript with a log of text messages (the "opt-in records"). ECF No. 6-1. The Court therefore relies on Defendant's description of the Terms of Service. *See* ECF No. 6 at 30–32. Defendant's Motion for Judgment on the Pleadings describes the Terms as Exhibit B to the Answer, ECF No. 14 at 4, 20, but Exhibit B to the Postscript letter is a message log. ECF No. 6-1 at 5–25.

Defendant further alleges that these breaches caused Heart & Soil to suffer damages in the form of fees, costs, and expenses from this lawsuit. *Id.* at 38. Plaintiff argues that the Court should dismiss this counterclaim because "Defendant cannot use a contract counterclaim to shift the cost of defending a TCPA suit back onto the plaintiff." ECF No. 12-1 at 7.[7]

Defendant contends that Heart & Soil's Terms of Service select Texas law. ECF No. 18 at 23. Plaintiff argues that California law applies, ECF No. 20 at 5–7, and that Counterclaim II fails even under Texas law, *id.* at 8–9. The Court need not resolve that dispute. Defendant relies only on Texas law, and Counterclaim II fails under that law for the reasons below. Because Defendant does not identify any law more favorable to its claim, the Court assumes, without deciding, that Texas law governs.

Under Texas law, the question is whether the costs of defending this lawsuit can satisfy the damages element of Defendant's breach of contract claim. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.).

"Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized by contract or statute." *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding). Texas courts have also "long distinguished attorney's fees from damages" and held that "attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages." *Id.* at 172, 174. Here, Defendant relies on Chapter 38 of the Texas Civil Practice and Remedies Code to seek recovery of attorney's fees. ECF

---

[7] Plaintiff further argues that (1) "[f]ederal law does not recognize a right of indemnity or contribution for TCPA liability"; (2) "[e]nforcing a private indemnity clause to make the TCPA plaintiff finance Defendant's defense is contrary to public policy"; (3) "Defendant cannot substitute a damages counterclaim for a motion to compel [arbitration]"; and (4) the challenged statement is about consent, "not an independently actionable contractual misrepresentation." ECF No. 12-1 at 7–16. The Court need not address these arguments given the dismissal of Counterclaim II.

No. 18 at 23–24. Section 38.001 permits a person to "recover reasonable attorney's fees" from an "individual or organization," "in addition to the amount of a valid claim and costs," if the claim is for "an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8). To recover fees under that statute, however, "a party must first prevail on the underlying claim *and* recover damages." *In re Nalle Plastics*, 406 S.W.3d at 173 (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009)). Defendant has not alleged any damages apart from the fees and costs associated with this lawsuit. ECF No. 6 at 38.[8] As explained above, those fees "are not compensatory damages." *In re Nalle Plastics*, 406 S.W.3d at 174. Defendant therefore does not meet § 38.001's threshold requirement to recover damages.

The Court next considers the contract, the other source of attorney's fees that the American Rule recognizes. *See In re Nalle Plastics*, 406 S.W.3d at 172. Defendant relies on the Terms of Service's indemnification provision, which requires users:

> [T]o hold harmless, indemnify, and defend Heart & Soil, its officers, employees, agents, successors, and assigns, from and against any and all claims, demands, losses, damages, rights, and actions of any kind . . . that either directly or indirectly arise out of or are related to your use of the Website . . . [or] your violation of any term or condition of this Agreement.

ECF No. 6 at 32; *see id.* at 37. Under Texas law, an indemnity provision generally "does not apply to claims between the parties to the agreement; instead, it obligates the indemnitor to protect the indemnitee against claims brought by a person not a party to the agreement." *Osprin II, LLC v. TX 1111 Rusk GP LLC*, No. 06-21-00085-

[8] Counterclaim II also seeks "such other damages as will be proven at trial or arbitration." ECF No. 6 at 38. That catch-all phrase identifies no injury and does not plausibly allege damages. *See Iqbal*, 556 U.S. at 678. Counterclaim II also requests "specific performance of the arbitration agreement," ECF No. 6 at 38, but Defendant explicitly states it "has elected damages over specific performance," ECF No. 18 at 10. The Court therefore treats Counterclaim II as a damages claim.

CV, 2022 WL 2541932, at *10 (Tex. App.—Texarkana July 8, 2022, pet. denied) (mem. op.) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 130 (Tex. App.—Houston (14th Dist.) 2000, pet. denied)). If parties "intended to include claims between them, they would have had to specifically add such language to the indemnity provision." *Id.* (citation modified). In *Osprin*, a clause indemnifying a lender against "any and all claims, demands, lawsuits, judgments, awards, costs and expenses, including, but not limited to, reasonable attorney fees," arising from the loss or impairment of certain capital contributions, did not reach claims between the parties because it lacked "any specific language that would overcome the general rule that indemnity provisions do not apply to claims between the parties." *Id.* at *9–10. In this case, the indemnification provision is no different. It contains no language reaching claims between Heart & Soil and its users. Additionally, it uses "the hallmark language of a third-party indemnification provision" (e.g., "indemnify," "defend," and "hold . . . harmless"). *Crest Foods, Inc. v. FAT Brands, Inc.*, No. 3:24-CV-2447-D, 2026 WL 2445549, at *3 (N.D. Tex. Aug. 20, 2026). It also protects Heart & Soil's officers, employees, and agents. ECF No. 6 at 32. Its reference to a user's "violation of any term or condition" does not change this result. In *Crest Foods*, the indemnification provision similarly covered "any breach or non-fulfillment of any covenant, agreement or obligation to be performed by" the indemnitor under the parties' agreement, yet the court held that it did not authorize "first-party contractual indemnification claims." 2026 WL 2445549, at *2–4; *see id.* at *4 ("That an indemnity clause is broad, however, is not sufficient to satisfy the express language requirement."). Because neither the Terms of Service nor the statute (§ 38.001) allows Defendant to recover the costs of defending this lawsuit, Counterclaim II does not plausibly allege the damages element of a breach of contract claim.[9]

[9] Defendant argues that Plaintiff's motion does not reach all of Counterclaim II's theories, but each alleged breach rests on the same claimed injury: the costs of

Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss Counterclaim II with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion. Counterclaim I is **STRICKEN** without leave to amend. Counterclaim II is **DISMISSED** with leave to amend. Defendant may file an amended Counterclaim II within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 29, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

defending this lawsuit. ECF No. 18 at 31. The absence of cognizable damages therefore disposes of Counterclaim II as a whole, and the Court does not reach the parties' remaining arguments. *See* ECF No. 12-1 at 7–16; ECF No. 18 at 21–30; *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").