# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

CHARLES BATHERSFIELD, individually and on behalf of all those similarly situated,

Plaintiff,

vs.

HEART & SOIL SUPPLEMENTS, LLC, a Texas limited liability company,

Defendant.

**CASE NO. 3:26-cv-01124-GPC-SBC**

**ORDER:**
- **DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**
- **DENYING DEFENDANT'S MOTION FOR EARLY DETERMINATION THAT CLASS CERTIFICATION BE DENIED**

**[ECF No. 14]**

Before the Court is Defendant's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) and for an Early Determination that Class Certification be Denied. ECF No. 14. Plaintiff filed an opposition and Defendant replied. ECF Nos. 19, 21. For the reasons set forth below, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings and **DENIES** Defendant's Motion for an Early Determination that Class Certification be Denied.

/ / /

/ / /

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for the purpose of resolving the instant motion.

This case arises from marketing text messages that Defendant and Counter-Complainant, Heart & Soil Supplements, LLC ("Heart & Soil"), sent to Plaintiff and Counter-Defendant Charles Bathersfield. ECF No. 1 ("Compl.") ¶¶ 7–8, 16.[1] The Telephone Consumer Protection Act ("TCPA") and its implementing regulations prohibit "telephone solicitations to residential telephone subscribers before 8 am and after 9 pm." *Id.* ¶ 13 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(1)). Plaintiff alleges that Heart & Soil sent him marketing text messages "on or about November 28, 2025[,] and January 15, 2026" at 6:11 a.m. and 5:14 a.m., respectively, in Plaintiff's local time. *Id.* ¶¶ 14–15. The messages were meant to "advertise, promote, and/or market Defendant's property, goods, and/or services." *Id.* ¶ 17. Plaintiff further alleges that he "never signed any type of authorization" that permitted Defendant to send the text messages (or "telephone solicitations") during those prohibited hours. *Id.* ¶ 21.

Plaintiff brings this putative class action on behalf of himself and "all other similarly situated persons" who received more than one marketing text message from Heart & Soil within a 12-month period before 8 a.m. or after 9 p.m. local time. *Id.* ¶ 23. Plaintiff seeks injunctive relief and statutory damages. *Id.* ¶ 6.

## PROCEDURAL HISTORY

On February 23, 2026, Plaintiff filed this putative class action. ECF No. 1. Plaintiff alleges that Defendant violated the TCPA, 47 U.S.C. § 227(c), and its implementing regulation, 47 C.F.R. § 64.1200(c)(1). Compl. ¶¶ 34–40. On April 17, 2026, Defendant answered, asserting eleven affirmative defenses and two counterclaims. ECF No. 6. In Counterclaim I, Defendant seeks a declaratory

---

[1] The Court cites each document's own pagination. If a document lacks internal page numbers, the Court relies on the CM/ECF pagination at the top of the page.

judgment regarding the "legal relationship between prior express consumer consent and the FCC's quiet hours rules," and in Counterclaim II, Defendant alleges a breach of contract claim against Plaintiff. *Id.* at 28, 33–38. On May 22, 2026, Plaintiff moved to dismiss Counterclaims I and II under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike Counterclaim I under Rule 12(f). ECF No. 12.[2] On June 19, 2026, Defendant filed its opposition. ECF No. 18. On July 3, 2026, Plaintiff filed a reply. ECF No. 20.

On May 26, 2026, Defendant moved for Judgment on the Pleadings and for an Early Determination that Class Certification be Denied. ECF No. 14. Plaintiff opposed, Defendant replied, and Defendant later filed a Notice of Supplemental Authority. ECF Nos. 19, 21, 22.

## DISCUSSION

### I. JUDGMENT ON THE PLEADINGS

Defendant moves for judgment on the pleadings as to Plaintiff's Count I, which alleges violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(1). ECF No. 14; Compl. ¶¶ 34–40. Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted because text messages fall outside the scope of § 227(c)(5)'s operative phrase "telephone call." ECF No. 14 at 7–12. Additionally, Defendant argues that, even if a text message is deemed a "telephone call," Plaintiff's alleged prior express consent defeats the TCPA claim as a matter of law. *Id.* at 14–19. In opposition, Plaintiff contends that § 227(c)(5) does cover text messages because they qualify as a "'call' within the meaning of the TCPA." ECF No. 19 at 3–5. Plaintiff also argues that Defendant is not entitled to judgment as a matter of law because consent is an affirmative defense that Defendant must prove, rather than an element of Plaintiff's claim. *Id.* at 8–9.

[2] Unless otherwise noted, "Rule" and "Rules" refer to the Federal Rules of Civil Procedure.

**A. Legal Standard as to Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure ("Rule") 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[3] The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (Rule 12(c) is "functionally identical" to Rule 12(b)(6), and "the same standard of review" applies to both (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989))). On a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* But judgment on the pleadings "is not appropriate if the complaint raises issues of fact which, if proven, would support recovery." *High Sierra Hikers Ass'n v. Powell*, 150 F. Supp. 2d 1023, 1031 (N.D. Cal. 2001) (citing *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230–31 (9th Cir. 1989)).

"Documents attached to, incorporated by reference in, or integral to the complaint may be properly considered under Rule 12(c) without converting the

[3] Typically, when a defendant asserts counterclaims, the pleadings do not close until the plaintiff answers them. *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020), *modified on other grounds*, No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020). Here, Plaintiff had not answered Defendant's counterclaims when Defendant filed this motion, and he still has not. *See* ECF Nos. 12, 24. But an unanswered counterclaim is "immaterial" when the motion "applies only to [the plaintiff's] complaint." *Outlaw Lab'y*, 463 F. Supp. 3d at 1079. Because Defendant seeks judgment only on Plaintiff's Complaint, the motion is timely.

motion into one for summary judgment." *Hupp v. San Diego Cnty.*, No. 12-CV-0492-GPC (RBB), 2014 WL 842927, at *2 (S.D. Cal. Mar. 4, 2014) (citing *Rose v. Chase Manhattan Bank USA, N.A.*, 396 F. Supp. 2d 1116, 1119 (C.D. Cal. 2005)). However, if a court considers matters beyond the pleadings, it must treat the motion for judgment on the pleadings as one for summary judgment. *Hal Roach Studios*, 896 F.2d at 1550; Fed. R. Civ. P. 12(d).

**B. Analysis**

**1. <u>Whether § 227(c)(5) extends to text messages.</u>**

Section 227(c)(5) of the TCPA confers a private right of action on any person "who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). The parties dispute whether a text message constitutes a "telephone call" within the meaning of § 227(c)(5). *See* ECF No. 14 at 7–12; ECF No. 19 at 3–5.

Plaintiff argues that the Ninth Circuit has held in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009), and *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026), that a text message is a call under the TCPA, and that district courts in this Circuit have uniformly applied that holding to § 227(c)(5). ECF No. 19 at 3–4; *see, e.g., Miller v. S. Brown & Assocs., Inc.*, No. 2:26-CV-01480-MWC-SSC, 2026 WL 2855518, at *4 (C.D. Cal. Sept. 22, 2026); *Hopkins v. Homelight, Inc.*, No. 26-CV-5017-BHS, 2026 WL 2017320, at *3 (W.D. Wash. July 13, 2026); *Taha v. Momentive Software, Inc.*, No. 8:25-CV-02330-DOC-JDE, 2026 WL 974297, at *2–3 (C.D. Cal. Mar. 11, 2026); *Wilson v. Cirkul Inc.*, No. 6:25-CV-02036-AP, 2026 WL 1508003, at *3–5 (D. Or. Apr. 14, 2026). Defendant responds that *Howard* and *Satterfield* construed only § 227(b), that "telephone call" must carry its 1991 meaning, and that Congress added "text message" to other parts of § 227 (such as § 227(e)) but not to § 227(c)(5). ECF No. 14 at 7–12; ECF No. 21

at 1–2. Defendant argues that since Congress used the term "telephone call" in § 227(c) rather than "any call," it must have meant for them to work differently. ECF No. 14 at 10.

This Court is bound by the decisions of the Ninth Circuit. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). "Once a [court of appeals] panel resolves an issue in a precedential opinion, the matter is deemed resolved," unless an en banc court or the Supreme Court overrules it or Congress changes the law. *Id.* at 1171 & n.28. When a district court confronts apparently controlling authority, it must "parse the precedent in light of the facts presented and the rule announced." *Hart*, 266 F.3d at 1172. "Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis." *Id.*

Here, both sides address the reach of *Satterfield* and *Howard* in deciding whether a text is a "telephone call" under § 227(c)(5). In *Satterfield*, the Ninth Circuit addressed whether a text message constituted a "call" under 47 U.S.C. § 227(b)(1)(A), which prohibits "any call" using an auto-dialer. 569 F.3d at 952 (citing 47 U.S.C. § 227(b)(1)(A)). The court recognized that Congress could not have spoken clearly to this issue in 1991 because text messaging was unavailable in 1991. *Id*. at 954. After conducting statutory construction analysis, the court held that a "text message is a 'call' within the meaning of the TCPA." *Id.* In its analysis, the court also applied *Chevron* and held that the FCC's reading of the term was reasonable and entitled to deference. *Id.* at 952–54.

In 2026, in *Howard*, the Ninth Circuit reaffirmed its holding in *Satterfield*, explaining that "the conclusion would be the same even in the absence of *Chevron* deference." *Howard,* 164 F.4th at 1123. There, the court explained that although *Satterfield* deferred to the FCC under *Chevron*, it also relied on the tools of statutory

construction that courts continue to apply even after *Loper Bright* overruled *Chevron*. *Id.*; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Specifically, the court relied on the "ordinary, contemporary, and common meaning" of "call," which Webster's Dictionary defined as "to communicate with or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 (quoting *Webster's Third New International Dictionary* 318 (2002)).[4] The *Satterfield* court found that it was undisputed that "text messaging is a form of communication used primarily between telephones." 569 F.3d at 954.

In addition to interpreting the term "call," the *Satterfield* court considered the purpose of the TCPA, which Congress "enacted to 'protect the privacy interests of residential telephone subscribers.'" *Id.* at 954 (quoting S. Rep. No. 102-178, at 1 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1968). *Howard* applied that purpose to text messages, explaining that an arriving text "frequently entails an immediate intrusion on privacy comparable to that associated with the ring of an incoming auto-dialed phone call." 164 F.4th at 1124.

In both *Howard* and *Satterfield*, the Ninth Circuit held that a text message qualified as a call "within the meaning of the TCPA." *Howard*, 164 F.4th at 1123; *Satterfield*, 569 F.3d at 952. Neither court limited that holding to § 227(b)(1)(A).[5] Nor is there any reason to do so given that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Both § 227(b)(2)(B)(ii)(I) and § 227(c)(2) spell out Congress's desire to protect the privacy rights of telephone subscribers. As a result, the reasoning in *Satterfield* and *Howard* applies naturally to

[4] While *Satterfield* relied on the 2002 dictionary definition of "call," *Howard* cited the 1981 definition that was in place in 1991 when the TCPA was enacted. *Howard*, 164 F.4th at 1124.

[5] Both § 227(b)(1)(B) and § 227(c)(5) use the term "telephone call" although *Satterfield* did not have occasion to interpret the term.

the whole statute, including § 227(c), so that a text message qualifies as a call under that provision too. And given that no intervening en banc or Supreme Court decision has overruled either case, and Congress has not changed the language at issue, both decisions bind this Court and control its decision. *Hart*, 266 F.3d at 1171 ("[B]inding authority is very powerful medicine.").

Also, in parsing "the precedent in light of the facts presented and the rule announced," the Court concludes that the facts of this case closely resemble those of *Howard* and *Satterfield*. *Hart*, 266 F.3d at 1172. In *Howard*, the defendant sent an automated text message, containing written text and a video file, to the plaintiff's cellphone. 164 F.4th at 1120. In *Satterfield*, the defendant texted the plaintiff's cellphone an unwanted advertisement for a novel. 569 F.3d at 949. Here, Plaintiff alleges that Defendant sent him text messages advertising its product during prohibited hours. *See* Compl. ¶¶ 14–17. The cases differ in one relevant respect: *Howard* and *Satterfield* arose under § 227(b), while in this case Plaintiff sues under § 227(c)(5) and 47 C.F.R. § 64.1200(c)(1). *Id.* ¶¶ 35–40. However, that difference is immaterial given the purpose of the TCPA to protect the privacy rights of residential telephone subscribers. *Satterfield*, 569 F.3d at 954 (treating text message as a "call" consistent with the statute's declared purpose to protect privacy rights). The intrusion *Howard* described—an arriving text that lights up the screen, sounds, or vibrates—is the same intrusion that the early-morning texts allegedly caused Plaintiff. *Howard*, 164 F.4th at 1124. There is no principled basis to distinguish *Howard* by limiting the invasion of privacy rights to recipients of unwanted calls to the exclusion of recipients of unwanted text messages.

In a notice of supplemental authority, Defendant urges the Court to follow the Seventh Circuit's recent holding that a text message is not a "telephone call" under § 227(c)(5). ECF No. 22 at 1–4; *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532,

534 (7th Cir. 2026). *Steidinger* does not change that result.[6] A review of *Steidinger* does not persuade the Court that the Ninth Circuit would apply the reasoning of *Steidinger* to its interpretation of § 227(c)(5). The analysis conducted in *Steidinger* is not unlike that conducted by the court in *Satterfield* when it held that a "text" qualified as a "call" for purposes of the TCPA. *Compare Steidinger*, 182 F.4th at 535–36, *with Satterfield*, 569 F.3d at 952–54. Both cases recognized that texts did not exist in 1991 when the TCPA was enacted and proceeded to interpret the TCPA term applying canons of statutory construction. *Satterfield*, 569 F.3d at 954; *Steidinger*, 182 F.4th at 535. Further, *Satterfield*'s statutory construction of "any call" has equal force in interpreting "telephone call."

*Steidinger*, unlike the Ninth Circuit, gives little weight to the purpose of the TCPA and affords no weight to the FCC interpretation. *Steidinger*, 182 F.4th at 539. *Steidinger*'s holding is primarily premised on its dictionary interpretation of "telephone call." *Id.* at 535–36. Like *Satterfield,* the Seventh Circuit interprets a "call" to mean "to get or try to get into communication by telephone" and then adds the definition of "telephone," "[a]n instrument for reproducing sounds at a distance." *Id.* In so doing, *Steidinger* held that a "telephone call" was limited to communication via sound. *Id.* at 536. However, "telephone" adds nothing as a qualifier because a "call" by definition involves "communication by telephone." *Id.* In interpreting "call" as "to communicate with or try to get into communication with a person by a telephone," *Satterfield* necessarily accounted for the fact that telephones involve sound. It held that "[t]he language and purpose of the TCPA support the conclusion that the use of an ATDS to make any call, regardless of whether that call is communicated by voice or text, is prohibited." *Satterfield*, 569 F.3d at 954.

---

[6] This analysis also addresses the out-of-circuit district court decisions Defendant cites in footnote 1 of its reply brief. ECF No. 21 at 2 n.1.

*Satterfield* decided the case on the premise that "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Id.* at 954.[7]

Lastly, Defendant argues that the major questions doctrine bars "Plaintiff's recovery" because the FCC extended § 227(c) to text messages without clear congressional authorization. ECF No. 14 at 12–14; ECF No. 21 at 2–4. The major questions doctrine applies to cases in which "agencies [are] asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022). In such cases, the agency must "point to 'clear congressional authorization' for the power it claims." *Id.* at 723 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). But neither Plaintiff's claim nor *Howard*'s holding rests on an FCC interpretation of the statute. ECF No. 19 at 5; *Howard*, 164 F.4th at 1123 (concluding that the result "would be the same even in the absence of *Chevron* deference"). Because the reach of § 227(c) to text messages comes from the statute's text, as the Ninth Circuit has construed it, rather than from an agency's expansion of it, Defendant's argument fails.

Accordingly, Defendant is not entitled to judgment on the pleadings on this ground.

**2. <u>Whether consent can be decided on the pleadings.</u>**

The FCC's quiet-hours rule, promulgated under § 227(c), provides that "[n]o person or entity shall initiate any *telephone solicitation*" to a "residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." 47 C.F.R. § 64.1200(c)(1) (emphasis added). The TCPA's definition of "telephone solicitation," 47 U.S.C. § 227(a)(4), excludes any call or message sent "to any person with that person's prior express invitation or permission." *See also* 47 C.F.R. § 64.1200(f)(15)(i). In other

[7] The U.S. Supreme Court has observed that "while every statute's meaning is fixed at the time of enactment, new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). In interpreting "call," the court in *Satterfield* arrived at a new application based on changes, i.e., the introduction of texts to communicate via telephone. *See* 569 F.3d at 954.

words, messages sent to a recipient who has consented to them are not telephone solicitations and thus fall outside the quiet-hours rule. The parties dispute whether consent can defeat Plaintiff's TCPA quiet-hours claim at the pleading stage. Defendant argues that Plaintiff's TCPA claim fails as a matter of law because, even if text messages are calls under § 227(c)(5), Plaintiff consented to receive them when he enrolled in Defendant's text-message program. ECF No. 14 at 14–19. Defendant relies on two documents. The first is a letter from Postscript, Defendant's text-messaging vendor, with a log of text messages (the "opt-in records"), attached as Exhibit A to the Answer. ECF No. 6 at 5; ECF No. 6-1. The second is the Declaration of G. David Carter. ECF No. 14-1; *see* ECF No. 14 at 4, 18. In response, Plaintiff contends that consent is an affirmative defense that Defendant must prove, not an element of Plaintiff's TCPA claim. ECF No. 19 at 8–9. Plaintiff also argues that Defendant's documents cannot be considered on a Rule 12(c) motion. *Id.* at 6–8.

"Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 & n.3 (9th Cir. 2017). Defendant argues that "[l]ack of consent is an element of Plaintiff's quiet hours claim, not an affirmative defense." ECF No. 21 at 5–6 n.3; *see also* ECF No. 14 at 14–15. In Defendant's view, Plaintiff must allege that he did not consent to the text messages to state a quiet-hours claim because the rule reaches only "telephone solicitation[s]," and § 227(a)(4) excludes consented messages from that term. ECF No. 21 at 5–6 n.3. That framing does not shift the burden. An exclusion from a statutory definition is still an exception to the statute's coverage, and "those who set up such exception must prove it." *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 91 (2008) (quoting *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508 (1910)); *see Wolfe v. GoodVets Veterinary Servs., LLC*, No. CV-26-02836-PHX-MTL, 2026 WL 1862040, at *2–3 (D. Ariz. June 25, 2026) (placing the burden on the defendant to

show "prior express invitation or permission" in a quiet-hours case). Defendant's own Answer treats consent the same way, pleading it as its First Affirmative Defense. ECF No. 6 at 22. Plaintiff therefore need not plead the absence of consent, and Defendant is entitled to judgment on that defense only if, on the face of the pleadings, "no material issue of fact remains to be resolved." *Hal Roach Studios*, 896 F.2d at 1550.

On a Rule 12(c) motion, the Court accepts the non-moving party's allegations as true and treats the moving party's denied allegations as false. *Hal Roach Studios*, 896 F.2d at 1550. Because the Court has not ordered a reply to the Answer, *see* Fed. R. Civ. P. 7(a)(7), the Answer's allegations are "considered denied or avoided." Fed. R. Civ. P. 8(b)(6). Separately, the incorporation-by-reference doctrine is "a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A defendant may ask the court to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Although *Khoja* arose under Rule 12(b)(6), its reasoning applies here because the two rules apply the same standard. *See Cafasso*, 637 F.3d at 1054 n.4.

In this case, Plaintiff alleges that he "never signed any type of authorization permitting or allowing Defendant to send them telephone solicitations before 8 am or after 9 pm." Compl. ¶ 21. Contrary to Defendant's argument, ECF No. 21 at 5, this is a factual allegation, not a legal conclusion, and the Court must accept it as true. As to Defendant's request that the Court consider the opt-in records, the Court cannot incorporate them to contradict that allegation. *See Khoja*, 899 F.3d at 1002. Neither condition for incorporation is met here. The Complaint never mentions the opt-in records, and they do not form the basis of Plaintiff's claim. At most, the opt-in records create a "defense to the well-pled allegations in the complaint." *Id.* Plaintiff also

questions whether the opt-in records were properly authenticated, a dispute that independently bars incorporation. ECF No. 19 at 12; *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendant also argues that the opt-in records are part of the Answer under Rule 10(c). ECF No. 21 at 4. But even if they are, the Answer's allegations about Plaintiff's enrollment are deemed denied, so the Court must treat them as false.[8] As to the Carter Declaration, it is an extrinsic document (i.e., a document outside the pleadings), and the Court cannot consider it without converting the motion into one for summary judgment under Rule 12(d). *See Ritchie*, 342 F.3d at 907–08. The Court declines to do so.

Because the Court cannot consider the opt-in records at this stage, it does not reach the parties' dispute over whether consent to receive marketing messages extends to messages sent during quiet hours. *Compare* ECF No. 21 at 5–7, *with* ECF No. 19 at 10–11. Defendant is therefore not entitled to judgment on the pleadings on the basis of consent.

## II. EARLY DETERMINATION ON CLASS CERTIFICATION

Defendant also moves for an early determination that class certification be denied. ECF No. 14. Defendant asks the Court to deny certification and strike the class allegations now, before any class discovery, on four grounds. *Id.* at 19–24.[9] In response, Plaintiff argues that early determination "is not warranted" because

---

[8] The counterclaims also rely on the opt-in records, and unlike the Answer's allegations, the counterclaims' allegations require a response. Fed. R. Civ. P. 12(a)(1)(B). Plaintiff's silence on those allegations, however, is not an admission under Rule 8(b)(6) because he moved to dismiss the counterclaims instead of answering them, which postponed his time to respond. Fed. R. Civ. P. 12(a)(4); ECF Nos. 12, 24. The Court has since struck Counterclaim I and dismissed Counterclaim II with leave to amend in a separate order.

[9] Plaintiff defines the proposed class as follows: "All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one marketing text message within any 12-month period; (3) where such marketing text messages were initiated before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)." Compl. ¶ 23.

Defendant waived its right to arbitrate by litigating this case and because a ruling on class certification would be premature before "meaningful class discovery." ECF No. 19 at 12–17.

**A. Legal Standard as to Federal Rule of Civil Procedure 23**

Rule 23 does not "preclude a defendant from bringing a 'preemptive' motion to deny certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). "The only requirement is that the certification question be resolved '[a]t an early practicable time.'" *Id.* at 940 (quoting Fed. R. Civ. P. 23(c)(1)(A)). Within that timing requirement, "[d]istrict courts have broad discretion to control the class certification process." *Id.* at 942.

When a defendant files a preemptive motion to deny certification, the plaintiff still bears "the burden to establish that the class certification requirements under Rule 23 have been met." *Victorino v. FCA US LLC*, 322 F.R.D. 403, 405 (S.D. Cal. 2017); *see Vinole*, 571 F.3d at 944 n.9. But "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole*, 571 F.3d at 942. "[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable," which in most cases requires "enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977). Yet "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites," they must show "that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Id.*; *accord Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

Rule 23(d)(1)(D) permits a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Under that rule and Rule 23(c)(1)(A), the district court "has authority to

strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); *see also Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210–13 (9th Cir. 1975) (affirming order dismissing class action and striking class allegations without further discovery because the public record provided a sufficient basis to decide whether a class action was superior). But "[i]t is rare for a court to dismiss class allegations at the pleading stage prior to a motion for class certification." *Yorba v. Gov't Emps. Ins. Co.*, No. 24-CV-00031-GPC-VET, 2024 WL 3448090, at *8 (S.D. Cal. July 17, 2024) (citing *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011)); *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare.").

**B. Analysis**

Rule 23(a) establishes four requirements for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition to meeting these four requirements, a plaintiff must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Defendant argues that class certification is "legally impossible on the face of the pleadings" for four reasons: (1) every class member is bound by the Terms of Service's class-action waiver and arbitration clause; (2) individual questions of consent and location predominate over common questions under Rule 23(b)(3); (3) Plaintiff is not an adequate class representative under Rule 23(a)(4); and (4) proposed class counsel is inadequate under Rule 23(g). ECF No. 14 at 19–24.

Plaintiff has pleaded class allegations that track Rule 23's requirements, but he has not yet moved for certification, and no class discovery has occurred. *See*

Compl. ¶¶ 23–33. Although Plaintiff bears the burden on certification, *Vinole*, 571 F.3d at 944 n.9, he ordinarily should have an opportunity for discovery before that burden is tested. *See Doninger*, 564 F.2d at 1313. The Court therefore does not ask whether Plaintiff has satisfied Rule 23; it asks instead whether "the complaint demonstrates that a class action cannot be maintained." *Hovsepian*, 2009 WL 5069144, at *2. Each of Defendant's four grounds fails that test because each depends on facts outside the Complaint.

First, Defendant argues that class certification is "legally impossible" because every putative class member agreed to a class-action waiver and a mandatory arbitration clause by accepting Defendant's Terms of Service. ECF No. 14 at 19–20. In response, Plaintiff argues that Defendant waived its right to arbitrate by litigating the merits rather than moving to compel arbitration. ECF No. 19 at 13–14. Plaintiff also argues that whether every putative class member opted in and accepted the same Terms of Service is a "threshold fact question" that requires discovery. *Id.* at 14. In reply, Defendant clarifies that it does not seek to compel Plaintiff to arbitrate now. ECF No. 21 at 10. Instead, it argues that the absent class members' agreements to arbitrate individually are "a contractual bar that makes class certification inappropriate." *Id.* (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)).

A party seeking to enforce an arbitration agreement "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Here, Defendant has not made that showing. The Complaint says nothing about the Terms of Service, a class-action waiver, or arbitration, and the Terms are not in the record. Defendant describes them as "Exhibit B" to its Answer, ECF No. 14 at 4, 20, but the only Exhibit B in the record, an attachment to the Postscript letter, is a message log. ECF No. 6-1 at 5–25. Defendant's own Answer also undercuts its premise that every class member

agreed to the same terms. The Answer acknowledges that the inquiry may turn on "whether the subscriber's specific Terms of Service version included an arbitration clause and class action waiver," ECF No. 6 at 9, and it alleges that the "individual arbitration provisions bind the majority of putative class members," *id.* at 25. Whether each class member assented to the Terms, and to which version, are questions of fact, and the answers likely lie in Defendant's own records. *See Doninger*, 564 F.2d at 1313. *O'Connor*, on which Defendant relies, does not hold otherwise. In *O'Connor*, the defendant had moved to compel arbitration, the agreements were in the record, and the Ninth Circuit had already reversed the district court's refusal to enforce them. 904 F.3d at 1091–93. The Ninth Circuit reversed the class certification orders because they rested on the district court's contrary ruling that the agreements were unenforceable. *Id.* at 1094–95. *O'Connor* therefore says nothing about whether a defendant may defeat class allegations before discovery by relying on an agreement it has not filed. Defendant may renew this argument at class certification.[10]

Second, Defendant argues that two individualized questions would predominate over any common ones. ECF No. 14 at 20–21. The first question is whether each subscriber consented—an inquiry into when and how each subscriber enrolled and whether each subscriber later opted out. *Id.* at 20. The second question is whether Defendant texted any subscriber before 8 a.m. or after 9 p.m. in the subscriber's local time. *Id.* at 21. Plaintiff responds that discovery will answer both questions: whether Postscript's enrollment data resolve consent classwide, and whether time-zone compliance can be shown with information that is in Defendant's exclusive possession. ECF No. 19 at 15.

[10] Because Defendant does not move to compel arbitration, ECF No. 21 at 10, the Court does not reach Plaintiff's argument that Defendant waived any right to arbitrate. *See* ECF No. 19 at 13–14.

Rule 23(b)(3) requires common questions of law or fact to "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A question is common when "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation modified). Whether consent and location can be proved with common evidence depends on how Defendant's platform recorded enrollment and location data, information in Defendant's sole possession. *See Doninger*, 564 F.2d at 1313. That question cannot be answered on the pleadings, before any class discovery has occurred. *Cf. Vinole*, 571 F.3d at 943 (affirming a preemptive denial of class certification after the plaintiffs had nearly ten months of discovery).

Third, Defendant argues that Plaintiff is an inadequate class representative for two reasons. ECF No. 14 at 21. Defendant first argues that Plaintiff's allegation that he "never signed any type of authorization" is "materially false" because the opt-in records show that he gave "prior express written consent" to the messages he received. *Id.* A plaintiff who makes a false allegation "central to his theory of liability," Defendant contends, cannot "honestly and competently represent absent class members." *Id.* Defendant then argues that class members would suffer if Plaintiff represented them because he is "subject to unique defenses that will dominate this litigation." *Id.* Plaintiff responds that his adequacy should be decided at class certification because it raises "fact-specific questions not suited for resolution at the pleading stage." ECF No. 19 at 16 (citation modified).

Whether Plaintiff will "fairly and adequately protect the interests of the class" is a question the Court cannot resolve on the pleadings. Fed. R. Civ. P. 23(a)(4). To answer it, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation modified). Here, both of Defendant's arguments rely on facts that go beyond the pleadings. The assertion that Plaintiff made a false allegation depends on considering the opt-in records, which the Court has already declined to do. *See supra* Section I.B.2. The second argument, that Plaintiff faces "unique defenses," is in tension with Defendant's own position that every class member enrolled through the same process and agreed to the same Terms of Service. ECF No. 14 at 19–20. If Defendant's view is correct, any defenses would be common to the class, not unique to Plaintiff. If not, any differences among class members would emerge in discovery. Either way, Plaintiff's adequacy is a question for class certification.

Fourth, Defendant argues that proposed class counsel cannot adequately represent the interests of the class and that counsel's shortcomings make Plaintiff an unsuitable class representative. ECF No. 14 at 22–24 (pointing to counsel's volume of TCPA filings, the orders to show cause issued in those cases, and the pre-filing investigation in this case); ECF No. 21 at 7–9. Plaintiff responds that the argument is premature because it rests on the Carter Declaration, and he has not had the chance to depose Carter. ECF No. 19 at 17.

This argument is also premature. Rule 23(g) requires a court to appoint class counsel when it certifies a class, Fed. R. Civ. P. 23(g)(1), and Plaintiff has not yet sought certification. Even if the issue were timely, all of Defendant's evidence comes from the Carter Declaration and its attachments, which are outside the pleadings and have not been tested. ECF No. 14-1. *In re Cavanaugh*, on which Defendant relies, concerned a district court's review of a lead plaintiff's choice of counsel under the Private Securities Litigation Reform Act, not a motion to deny certification before discovery. 306 F.3d 726, 732–33 (9th Cir. 2002). And even there, the Ninth Circuit cautioned that "the choice of counsel is only an indicator—and a relatively weak one at that—of plaintiff's fitness." *Id.* at 733. Defendant may renew its challenge when

Plaintiff moves for class certification. For now, the Court declines Defendant's request for an evidentiary hearing. ECF No. 21 at 9 n.4; *see Victorino*, 322 F.R.D. at 410 & n.3 (deferring a challenge to class counsel's adequacy until class certification and declining to consider new evidence raised in a reply footnote that the opposing party had no opportunity to address).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings and **DENIES** Defendant's Motion for an Early Determination that Class Certification be Denied.

**IT IS SO ORDERED.**

Dated: October 29, 2026

Hon. Gonzalo P. Curiel
United States District Judge